JOHN H. MILLER, Plaintiff, v. KANSAS CITY BRICK & STONE COMPANY (a Corporation), Defendant, Respondent; G. B. SILVERMAN, Receiver, Respondent; WILLIAM R. JAQUES, Appellant; AUSTIN MANUFACTURING COMPANY (a Corporation), Appellant.

Kansas City Court of Appeals, January 29, 1917.

1. **RECEIVERS: Stockholders: Distribution.** A receiver of a corporation sued a stockholder for the unpaid balance of a stock subscription and obtained judgment. Nothing was obtained by execution. Thereafter the debtor made an offer of compromise. The general creditors objected, and pending the settlement, the judgment debtor paid to some of the creditors certain sums of money to induce them to withdraw their objections to the compromise offer, which was done and the court confirmed the compromise, having no knowledge of the aforesaid private payments. *Held* that the procuring by said creditors of money from the judgment debtor secretly and privately gave them no lawful preference or advantage over other creditors.

2. ——: ——: ——. A receivership is for the benefit of all creditors and, after all parties are in court, should one or more unfairly and secretly obtain something of value from a debtor to the estate, he cannot longer participate in the receivership proceedings and enjoy the same *pro rata* distribution as other creditors, unless he give up the proceeds of the unfair and surreptitious advantage he has gained over them.

Appeal from Jackson County Circuit Court.—*Hon. Frank G. Johnson,* Judge.

REVERSED AND REMANDED.

*M. F. Ringolsky* for appellants.

*No brief* for respondents.

BLAND, J.—This cause is submitted to us on the Abstract of Record and appellants' brief; no other briefs have been filed.

Defendant, Kansas City Brick & Stone Company, by order of the court below passed into the hands of a receiver; after paying some of the company's larger preferred creditors, there were not sufficient available assets on hand with which to pay the remaining unpaid preferred creditors and unpaid general creditors. The general creditors whose claims were allowed (among them these appellants) numbered thirty-six (36), and their claims amounted to over thirty-one thousand ($31,000) dollars.

The court below made an assessment against the stockholders of the company upon their unpaid stock subscriptions and liabilities in the sum of forty-five thousand ($45,000) dollars, and the receiver, by direction of the court below, instituted suit against one Robert Nesch upon his unpaid stockholder's liability to said company. This suit resulted, on July 3, 1913, in a judgment being obtained against Nesch in the sum of forty-five thousand ($45,000) dollars; execution was issued and in due time a *nulla bona* return was made thereon.

On December 9, 1913, Robert Nesch, the judgment debtor, presented to the court below a written offer of compromise offering to pay the sum of thirteen thousand, five hundred ($13,500) dollars in cash in full satisfaction of the judgment against him. Thereupon all parties in interest, including all creditors, were given written notice thereof. Independent Power Company, Peteler Car Company, Clara I. Mansfield, and National

Bank of Commerce, of Kansas City, Missouri, all general creditors, appeared in court and objected to the compromise, and at the request of the attorneys for said objecting claimants, the court held up the acceptance of said compromise proposition until said claimants could look into the advisability as to whether or not all the creditors could by further litigation, at the creditors' expense and not at the expense of the receiver, obtain more money for the benefit of the receivership from the said Robert Nesch. During the time in which the matter of settlement with Robert Nesch was held up and pending, the above-mentioned four general creditors induced the said Robert Nesch to pay to each of said creditors sums of money upon condition that said creditors would withdraw their objections to the court's acceptance of the said thirteen thousand five hundred ($13,500) dollars compromise with the said Robert Nesch; and in consideration of the payment of such sums to said creditors, said creditors withdrew all of their objections to the court's acceptance of said compromise. The court, not knowing anything about said private adjustments and payments to the said four objecting creditors, accepted said sum of thirteen thousand, five hundred ($13,500) dollars from the said Robert Nesch in compromise of said judgment against him in the sum of forty-five thousand ($45,000) dollars, and released said judgment. It is also shown that none of the other thirty-two general creditors, or the receiver, knew, before the acceptance of said compromise by the court, of the private adjustments and payments by the said Robert Nesch to the said four objecting creditors.

After the acceptance of said compromise, and upon the knowledge of said private adjustments and payments to said four creditors coming to the attention of the court, the receiver filed a motion requiring the said four creditors to make an accounting of the money privately received, as aforesaid, by them from the said Robert Nesch. And, thereafter, the court did require said four creditors to account for such money.

William R. Jacques, a general creditor, and the Austin Manufacturing Company (a corporation), a general creditor (two of the defendants in this suit), filed a motion for a new trial and exceptions to the final order of distribution, in which they objected to the method of accounting made under the order of the court, and to the method of distribution of the funds in the hands of the receiver when the estate was finally closed. The court overruled the motion for a new trial and exceptions to the final order of distribution, and said defendants appealed.

At the time the court confirmed the compromise offer of thirteen thousand, five hundred ($13,500) dollars in settlement of the forty-five thousand ($45,000) dollars judgment held by the estate against Nesch, the court, the receiver, and the other thirty-two general creditors were all of the impression that said sum of thirteen thousand, five hundred ($13,500) dollars was all the money that could be obtained by settlement from Nesch. Afterwards it appears that Nesch was willing to pay a greater sum in settlement of said judgment, in that he paid directly to the said four general creditors the sum of four thousand, six hundred and nine and 3/100 ($4609.03) dollars. As we have seen, this money was paid out by Nesch in addition to the thirteen thousand, five hundred ($13,500) dollars which was paid openly and under the order of compromise made by the court. Had these facts been communicated to the court at the time he confirmed the compromise settlement it is not improbable that it would have resulted in the receiver being able to settle said judgment for a greater amount, but, instead, all these four general creditors acted upon the assumption that they might sell their assent to the approval of the compromise settlement for four thousand, six hundred and nine and 3/100 ($4609.03) dollars, and thus keep all the additional price, which was in effect offered by Nesch, to the exclusion of the other thirty-two general creditors who were allowed to stand by and see the compromise settlement approved, in the belief that thirteen thou-

sand, five hundred ($13,500) dollars was all that could be obtained by the compromise settlement, whereas, in effect, at least eighteen thousand, one hundred and nine and 3/100 ($18,109.03) dollars was obtained from said Nesch.

The court required the said four general creditors to reduce the amount of their respective claims by the amount they respectively received from the said Robert Nesch, and upon the balance left ordered the receiver to pay to each of them, together with the other thirty-two general creditors, a *pro rata* dividend.

This now being an equity case, the court has full power to adjust all equities arising among the creditors. We do not believe under the facts in this case that a proper method of distribution was made by the court below. The procuring by the said four general creditors of money from the judgment debtor Nesch, secretly and privately, without the consent or knowledge of the court, or of the receiver, or of the other general creditors, and in consideration of the withdrawal of their objections to the compromise settlement, was improper. [Gottschalk v. Kircher, 109 Mo. l. c. 184; Filburn v. Ivers, 92 Mo. 388; Pomeroy v. Benton, 57 Mo. 531.] In fact, it gave them an unlawful preference over the remaining general creditors.

A receivership is for the benefit of all creditors and, after all parties are in court, should one or more unfairly and secretly obtain something of value from a debtor to the estate, he cannot longer participate in the receivership proceeding and enjoy the same *pro rata* distribution as the other creditors, unless he give up the proceeds of the unfair and surreptitious advantage he has gained over them. It is not enough that he be permitted to retain the proceeds of such an advantage and that the same be treated as a payment upon his claim for that would be giving to him an undue preference to which he is not entitled, and would be putting a premium on wrong doing. It must be regarded that he has secured such advantage for the benefit of all the creditors. [Comstock v. McDonald, 136 Mich. 489.]

As a part of the agreement with the said four general creditors, made at the time they sold their consent to the approval by the court of the compromise settlement, Nesch took assignments of the claims of Independent Powder Company and Clara I. Mansfield. This did not give him any greater rights in the distribution than said claimants would have themselves had they retained their claims. It appears that the lower court has taken a contrary view.

The judgment is reversed and the cause remanded. All concur.