## ZEIGLER *v.* DANIEL.

### Opinion delivered April 9, 1917.

1. FRAUDULENT CONVEYANCES—PROOF OF FRAUD.—*Held*, no fraud shown in the insertion of the name of one T. in a deed executed by the deceased.

2. ADMINISTRATION—SALE OF·LAND—NOTICE OF TITLE.—Where the record title is not in the deceased, a purchaser at an administrator's sale is put upon inquiry.

3. LIS PENDENS—NECESSITY FOR NOTICE—KNOWLEDGE OF PARTIES.— Where all the parties interested in a purchase of land have actual knowledge of the condition of the title, Kirby's Digest, § 5149, providing for the filing of *lis pendens* notice has no application.

4. ESTOPPEL—PURCHASER AT ADMINISTRATOR'S SALE.—A purchaser at an administrator's sale, with knowledge of the title he is buying, can not invoke the doctrine of equitable estoppel, as against a person who has not misled him to his injury.

5. DEEDS—DELIVERY.—The act of the grantor in giving a. deed to a third person for record is a sufficient delivery to the grantee.

Appeal from Garland Chancery Court; *E. H. Wootton,* Special Chancellor; affirmed.

*W. A. Ratteree* and *J. H. Evans,* for appellant.

1. The deed was never intended as a gift to J. W. Daniel, but as a resulting trust for T. R. Daniel.

2. T. R. Daniel did not act as agent of his nephew J. W.

3. The mere fact of plaintiff filing a suit, or petition, in the probate court, without summons or notice, was not notice.

4. Under section 5149, Kirby's Digest, there was no *lis pendens* notice. 183 S. W. 955; 184 *Id.* 852.

5. Plaintiff is estopped.

6. The rents and purchase money have been marshalled and paid out. 107 Ark. 405, etc.

Cites 83 Ark. 416; 102 *Id.* 324; 183 S. W. 955; 134 *Id.* 948; 35 *Id.* 376; 37 *Id.* 47; 75 *Id.* 228, etc.; 107 *Id.* 405.

*A. S. McKennon,* for appellee.

1. The only way the estate of T. R. Daniel could have any interest would be on the theory that a trust resulted because he paid the consideration. The doctrine of resulting trusts is designed to carry into effect the intention of the parties, not to defeat it. 27 Ark. 77-88; Pom. Eq. Jur. (3 ed.), 2000.

2. The deed was not void as to creditors. 77 Ark. 60; 135 Am. 330; 77 Am. Dec. 203; 67 *Id.* 401.

3. The chancellor found the issues for appellee and his findings are not against the weight of the evidence. The evidence of appellants tending to rebut a gift consists of statements of deceased which are self-serving and incompetent. 96 Ark. 171, 175; 87 *Id.* 496; 77 *Id.* 309. Besides the evidence is contradictory and unreasonable.

4. Courts require clear and satisfactory proof of fraud. 11 Ark. 378; 82 *Id.* 20; 92 *Id.* 509.

5. T. R. Daniel was not insolvent and appellee is not estopped. 99 Ark. 260; 66 Id. 287; 2 Pom. Eq. Jur., sec. 804.

6. The *lis pendens* statute has no application. The sale by the administrator was void. 135 Am. St. 326. None of the parties are injured by the decree, and it should be affirmed.

HUMPHREYS, J. This suit was instituted on November 30, 1914, in the Garland County Chancery Court by appellee against appellant, to cancel a deed executed by Mary S. Zeigler, administratrix of the estate of T. R. Daniel, deceased, conveying to Benjamin W. Zeigler the following described real estate in Garland County, Arkansas, towit: the west half of the southeast quarter, the northeast quarter of the southeast quarter and the southeast quarter of the northeast quarter in section 32,, township 2 south, range 17 west; and for the cancellation of a mortgage executed by Benjamin W. Zeigler and Mary S.

Zeigler, his wife, to J. R. Ewing on the 16th day of March, 1914, to secure a note for $200; and to recover the possession from Mary S. Zeigler of the deed for said real estate executed on the 17th day of October, 1908, by W. H. LeCroy, Octavia LeCroy, J. A. LeCroy, Iona LeCroy and Mrs. J. F. LeCroy to appellant; and to recover the possession of said real estate from Benjamin W. Zeigler, and for rents.

Appellee alleged that he was the owner of said real estate by virtue of a deed executed by W. H. LeCroy *et al.* to appellee on the 17th day of October, 1908, and delivered to his uncle for him.

Benjamin W. Zeigler answered in substance, that the deed, under which appellee claims, had never been delivered to him and never passed any title to him, but whatever title it did pass, if any, was in trust for the uncle, T. R. Daniel; that T. R. Daniel died on the 22d day of November, 1909, the owner of the beneficial interest in said real estate; that it was sold by order of the probate court to pay probated claims against the estate of T. R. Daniel, deceased; that Albert W. Jernigan purchased the land at the sale, and that for valuable consideration he procured the certificate of sale, and on the 12th day of May, 1913, procured a deed to said real estate from Mary S. Zeigler, his present wife, who was the widow of T. R. Daniel, and the administratrix of the estate of the said T. R. Daniel; that he immediately entered into possession of said real estate under his deed, made valuable improvements thereon; that appellee knew of the proceedings in the probate court, failed to object and is estopped; that he afterward borrowed $200 from J. R. Ewing and gave a mortgage on said real estate to secure the indebtedness, and asked that J. R. Ewing be made a party.

Ewing was made a party and answered, setting up his mortgage and pleaded that appellee, by word and conduct, led him to believe that appellee intended to claim no interest in said real estate and is thereby estopped from claiming an interest therein as against his mortgage.

The cause was heard by a special chancellor upon the issues joined and the evidence in the form of depositions and exhibits, from which the court found that the plaintiff, J. W. Daniel (now appellee) is the owner of said real estate; that he acquired his title by deed from W. H. LeCroy *et al.*, and that Mary S. Zeigler is in the wrongful possession of the deed; that T. R. Daniel did not own said real estate at the time of his death; that the deed from Mary S. Zeigler, who was formerly Mary S. Daniel, administratrix of the estate of T. R. Daniel, deceased, to Benjamin W. Zeigler, passed no title, and that the Zeigler's mortgage to J. R. Ewing created no binding lien against said land. The court, in accordance with the findings, decreed a cancellation of Zeigler's deed, Ewing's mortgage, and surrender of the deed from LeCroy to appellee and the delivery of possession of said real estate to him.

From this decree an appeal has been lodged in this court and the cause is here for trial *de novo.*

The record is voluminous and it is impracticable to set out the evidence even in condensed form in this opinion. Suffice it to say we have read the evidence with great care and can not say the findings of fact by the learned chancellor are clearly against the preponderance of the evidence. In fact, we are of opinion that the findings of fact by the chancellor are supported by the weight of the evidence.

T. R. Daniel lived for years in the home of appellee's father. He was the uncle of appellee, and they were associates and close friends. T. R. Daniel was a cripple, and the appellee, as a boy growing up in the family, waited on his uncle for years. In fact, he was so very fond of his nephew that in the year 1902, prior to his marriage, he made a will devising and bequeathing practically all his estate to him. The business affairs of each were entrusted to the other and this confidential and friendly intercourse continued after the marriage of T. R. Daniel and until his death. It is quite natural that the

uncle should give his nephew a part of the real estate, even after his marriage.

(1)    The bone of contention is that T. R. Daniel purchased this land from the LeCroys in consideration of a mortgage held by him against the land, and had them make a deed to his nephew to cover up his estate and defeat his creditors. This is largely inferred from the fact that the deed was executed during, or just after, a general money panic in this country, together with some self-serving statements made by T. R. Daniel tending to establish a fraudulent purpose in having the name of appellee inserted in the deed. As against this contention, the natural desire exists on the part of the uncle to reward his nephew for valuable services and kindnesses, love, affection and in addition a close business relationship existed between them; Mrs. Iona LeCroy, J. A. LeCroy and R. W. Daniel all testified to the effect that appellee's name was ordered to be inserted in the deed by his uncle, who at the time stated that he wanted to make a gift of said land to his nephew because he had been of great assistance to him, and had done much for him when sick and afflicted; and the evidence of T. C. Williams, the justice of the peace who took the acknowledgment to the effect that he handed the deed to T. R. Daniel, who said he would hand it to his nephew; as well as the evidence of W. F. Daniel to the effect that T. R. Daniel gave him the deed to have it recorded.

The facts and circumstances in this case are not sufficient to establish a fraudulent purpose on the part of T. R. Daniel in conveying this property to his nephew.

(2-3)    On the record before us, there could be no question of innocent purchaser. All parties interested had actual knowledge of the existence of the deed from the LeCroys to J. W. Daniel. If they had not known of the deed, the record title was not in T. R. Daniel, but in the LeCroys, and that would have been sufficient alone to put parties purchasing upon inquiry, and by inquiry the real facts concerning the title could have been ascer-

tained. Appellant relies upon section 5149 *et seq.,* Kirby's Digest, known as the *lis pendens* statute. This statute has no place or application in the case before us for the reason that all interested parties had actual notice of the condition of the title.

(4) It is urgently insisted that the cause should be reversed for the reason that appellee knew of the proceedings in the probate court, and failed to stop them. In other words, appellant insists upon the equitable doctrine of estoppel. The evidence in this case does not meet the rule of equitable estoppel laid down by Mr. Pomeroy and adopted by this court in the case of *Geren* v. *Caldarera,* 99 Ark. 260. The rule there approved is as follows: "Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed, either of property, or contract, or of remedy, as against another person who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right, either of property, of contract, or of remedy." The chancellor must have found in this case that appellee's attorney attended the sale and objected thereto and informed those present of appellee's title. Benjamin W. Zeigler had actual notice of the character of title he was buying, and could not have been misled.

J. R. Ewing, one of the appellants, also invoked the doctrine of equitable estoppel and insists that he inquired directly from appellee concerning his title, and that appellee informed him that he did not intend to assert any claim to the land; and that on the strength of this representation he loaned $200 to Benjamin W. Zeigler and took a mortgage on the real estate in question to secure the payment of the note evidencing such indebtedness. We have examined the evidence of appellant, J. R. Ewing, and appellee, J. W. Daniel, on this point. Upon this point, J. R. Ewing testified as follows:

"Q. State whether or not you ever had any conversation with J. W. Daniel concerning these lands for the purpose of ascertaining if he made any claim to them, and, if so, please state in your own way the conversation you had with him and the purpose for which it was had?

A. Yes, sir; I had a conversation with Mr. Daniel in regard to the land. I asked him if he had the deed to this land, and he told me no, he did not have it, that he could have got it once, but he did not get it, and I asked him if he was going to try to get the land, and he said he did not know that it had been so long that he did not know whether he could get it or not. I told him that I wanted to know that I was thinking of taking a mortgage on this land for $200, and if he was going to try to get it, or had the deed to it, I did not want to have anything to do with it. That was all we said concerning the land.

Q. Did you have this conversation with him for the purpose of ascertaining whether or not he made any claims on these lands?

A. Yes, sir.

Q. You state as a matter of fact, that the conversation you had with J. W. Daniel, the plaintiff herein, at the time hereinbefore mentioned was for the purpose of ascertaining whether or not he claimed any interests in these lands, and at that time he gave you to understand that he had made some effort to claim them previous to the conversation, but at the time he talked to you he made no claim to them?

A. That is the way I taken it from his conversation that he did not have any claim on them then."

And upon the same point, J. W. Daniel testified as follows:

"Q. Do you know one Raymond Ewing that lives at Lonsdale, Arkansas?

A. Yes, sir.

Q. Did he ever have a conversation with you with reference to these lands?

A.  Yes, sir.

Q.  I will ask you if he asked you whether or not you had any claim on them?

A.  I don't remember just exactly what he did ask me, but something to that effect; I told him I did, the reason I said it was that he told me that Mr. Zeigler, Mr. Benjamin W. Zeigler, wanted to borrow two hundred dollars and wanted to let the place stand good for the money.

Q.  Do you know if he asked you about these LeCroy lands for the purpose of ascertaining whether or not you had any claim to them?

A.  That is what I considered that.

Q.  And wasn't it for the purpose of ascertaining your claim to these lands as he didn't wish to loan Ben W. Zeigler any money on the lands that you had any claim to, if you had any claim to them?

A.  I don't know.

Q.  The conversation had with you and Raymond Ewing was with reference to his loaning Ben W. Zeigler two hundred dollars and to secure the loan on these lands, was it not?

A.  Well, that is what he—I allowed that was it; well, he told me that he wouldn't let him have it, I am pretty sure, on that land, I don't know for certain, but I am just pretty sure he wouldn't let him have it on that land.''

There is a sharp conflict in the testimony of these witnesses.  The burden was upon Ewing to establish his allegation that J. W. Daniel had waived any claim to the real estate or had misled him.  His proof does not meet this burden.  Ewing's own testimony admits that J. W. Daniel told him he did not know whether he would contend for the land.  J. W. Daniel states positively that he told Ewing that he had a claim on the land.  The chancellor found the issue on this point against Ewing, and the finding is not contrary to the weight of the evidence.

(5)   It is contended that the deed was never delivered to J. W. Daniel and for that reason never passed title to him.   The evidence is undisputed that T. R. Daniel gave the deed to W. F. Daniel to be placed of record. This was a sufficient delivery to J. W. Daniel in order to pass the title.

The decree is affirmed.