## DRUMMOND *v.* BATSON.

### Opinion delivered February 4, 1924.

1. APPEAL AND ERROR—DECISION ON FORMER APPEAL.—Where it was held upon a former appeal that a partnership existed, such holding is the law of the case on a subsequent appeal.

2. PARTNERSHIP—EXCLUSION OF PARTNER—LIABILITY FOR PROFITS.—Where a partner, before expiration of the time limit of the partnership, wrongfully excluded his copartner from participation in the business, and, after such time limit, continued to use the partnership property in conducting the business, he will be liable to account to his copartner for the latter's share of the profits until the partnership is legally dissolved.

3. PARTNERSHIP—GOOD FAITH.—Partners are bound to conduct themselves with good faith towards each other, and the partnership property cannot be used for the private gain of one of the partners to the exclusion of the others.

4. PARTNERSHIP—EXCLUSION OF PARTNER—LIABILITY.—Where plaintiff and defendant operated a hotel under a lease not providing for its renewal, and defendant wrongfully excluded plaintiff from participating in the business, and thereafter, by reason of his exclusive possession, secured a renewal of the lease and continued to use the partnership property, plaintiff was entitled to participate in the profits of the business under the new lease until a legal dissolution.

5. LIS PENDENS—PURCHASER WITH ACTUAL NOTICE.—A purchaser of an interest in partnership property from one of the partners,

pending a suit for dissolution and accounting of which he had actual knowledge, is not an innocent purchaser, but is a constructive trustee, and liable to account to the other partner, notwithstanding no *lis ·pendens* was filed, as required by Crawford & Moses' Dig., § 6979.

6. PARTNERSHIP—PURCHASE OF PARTNER'S INTEREST.—One who, pending a suit between partners for an accounting, with actual notice, purchased an interest in the partnership property from one of the partners, *held* subject to the rule that a trustee cannot profit from the estate for which he acts.

7. EQUITY—PLAINTIFF MUST DO EQUITY.—Where a partner, wrongfully excluded by his copartner from participation in the operation of a hotel, elected to share in the profits until the partnership was legally dissolved, the other partner and one to whom ·he sold the business were entitled to compensation for managing the business, and the expenses of receivership and accounting should be divided, following the maxim that he who seeks equity must do equity.

Appeal from Union Chancery Court; *J. Y. Stevens,* Chancellor; affirmed.

### STATEMENT OF FACTS.

This is an appeal from a decree of the chancery court winding up and settling the affairs of a partnership and distributing its assets to the persons entitled thereto.

The suit was commenced in the chancery court by N. W. Drummond against S. H. Batson on June 7, 1922. Drummond asked for a judgment against Batson upon certain promissory notes for the amount of $5,000, and for the foreclosure of a lien on Batson's half interest in the furniture and fixtures of the Garrett Hotel in El Dorado, Arkansas, to secure said indebtedness.

Batson filed an answer and cross-complaint against Drummond on June 19, 1922. He defended the suit on the ground that a partnership existed between himself and Drummond in operating the Garrett Hotel, and that his share of the profits of the partnership was more than sufficient to pay the notes sued on. By way of cross-complaint he alleged that Drummond had unlawfully prevented him from taking any part in running the partnership business, and had denied that he had any interest therein. He asked that the business of the partnership.

be wound up and that an account be stated between them. He asked for the appointment of a master to state the account, and for a receiver to take charge of the partnership property and wind up its affairs and distribute the proceeds arising from the sale of the partnership property to the partners.

On the 11th day of April, 1922, N. W. Drummond and S. H. Batson entered into a written agreement whereby the former sold to the latter a half interest in all furniture, fixtures and other property used in operating the Garrett Hotel in El Dorado, Arkansas, and also a half interest in a lease on the Garrett Hotel, which Drummond had already secured, and which terminated on the first day of January, 1923.

According to the testimony of Batson, a partnership was formed between them for the purpose of operating the hotel, and both of them proceeded to discharge their respective duties in operating the hotel under the partnership. Subsequently Drummond denied that any partnership existed between them, and excluded Batson from any share in the management of the hotel.

On the other hand, Drummond denied that any partnership existed between them, and claimed that Batson owed him for the purchase price of a half interest in the furniture and fixtures of the hotel, and had given him a lien on said property to secure the payment thereof.

The chancery court refused to appoint either a receiver or a master, as prayed for in the cross-complaint of Batson. The chancellor, however, did undertake to state an account between the parties, and, after entering a decree in favor of Drummond for the balance found to be due upon the notes sued on, ordered a sale of Batson's interest in the property in satisfaction thereof. This decree was entered of record on the 22d day of June, 1922. To reverse that decree Batson appealed to this court.

Upon appeal it was held that, under the facts established in the chancery court, a partnership existed between Drummond and Batson for the operation of the

Garrett Hotel. The decree of the chancery court was reversed, and the cause remanded with directions to appoint a master to state an account between the parties, in accordance with the opinion, and to appoint a receiver to take charge of and wind up the partnership business. The opinion of the court was delivered by Judge SMITH on March 26, 1923. *Batson* v. *Drummond,* 158 Ark. 29.

Upon the remand of the case to the chancery court, a receiver and a master were appointed on the 26th day of April, 1923. The receiver was directed to take charge of the hotel and the partnership business, and to wind up the partnership affairs. The master was directed to state an account between the partners.

During the pendency of the former appeal to this court, N. W. Drummond secured from R. N. Garrett, the owner of the hotel, a new lease, in writing, on it. The lease is dated November 3, 1922, and runs from January 1, 1923, to December 31, 1923. On February 3, 1923, N. W. Drummond, by a contract in writing, assigned and transferred to R. E. Harland the new lease, and, in the same instrument, conveyed to him all of the furniture, fixtures, and other personal property forming a part of the Garrett Hotel as then maintained and operated by N. W. Drummond. N. W. Drummond had been operating the hotel during all of this time, and turned the same over to R. E. Harland on February 3, 1923. R. E. Harland then operated the hotel until May 1, 1923, when, by the orders of the chancery court, he turned it over to the receiver. The receiver continued to operate it until it was sold by him, under orders of the court, on June 30, 1923. During all of this time there was an oil boom in El Dorado, Arkansas, and the hotel was operated at a profit. There was a continued rise in the rental value of property, especially of good hotel property like that in question.

The court considered the new lease for the year 1923, which Drummond had secured in his own name, to be a part of the partnership's assets, and directed it to be sold, and it was sold by the receiver in connection with the other assets of the partnership.

The chancellor held that Batson was entitled to one-half of the net profits derived from the operation of the hotel from the time he was excluded from the partnership until the sale by the receiver of the partnership assets under directions of the court. This included the time that the hotel was operated by N. W. Drummond, by R. E. Harland, and by the receiver.

Other facts will be stated in the opinion.

A decree was entered in accordance with the findings of the chancellor, and the proceeds derived from the sale of the property were directed to be distributed to the parties found to be entitled to them.

N. W. Drummond and R. E. Harland have both appealed from the decree of the chancery court.

*Geo. R. Haynie* and *Goodwin & Goodwin,* for appellant Drummond.

1. Batson estopped himself from claiming any interest in the lease for the year 1923. 136 Ark. 405; 153 Ark. 432, 243 S. W. 811.

2. The partnership was dissolved as of the date of the filing of the cross-complaint by Batson, June 19, 1922, and thereafter, until the expiration of the then existing lease on the Garrett Hotel, Drummond was a trustee of the lease for Batson until its expiration on December 31, 1922. 72 S. E. 638; 153 N. W. 522; 45 Pa. Super. Ct. 575; 110 Miss. 553.

3. Since the contract which created the partnership was not a contract for any definite time, the relationship created was a partnership at will. 58 Mich. 476, 25 N. W. 472; 138 Pac. 544; 15 Ari. 280; 142 Pac. 194; 114 S. W. 260; 168 U. S. 328; 148 N. Y. S. 801, 85 Misc. Rep. 510; 81 Ark. 68, 98 S. W. 685.

*U. L. Meade, W. H. Hawkins* and *Marsh & Marlin,* for appellant Harland.

1. When, on February 3, 1923, Drummond sold to Harland the lease for the remainder of the year 1923 and the fixtures and furnishings, Harland thereby procured a good title to the lease for that year, and a good title to a one-half interest in the furnishings and fixtures. In

none of the cases relied on by appellee has it been held that, when partners fall out and a suit is filed for dissolution of the partnership, either of them from that time is precluded from dealing solely for himself with respect to any property not then a part of the partnership assets. The litigation at once ends the relation of trust and confidence. The relation is broken when one partner sues the other for an accounting and winding up the affairs of the partnership. 60 S. W. (Tenn.) 619.

2.    Notice of *lis pendens* was never filed concerning this lease, or calling it into question. C. & M. Digest, § 6979. While it has been held that actual notice of the pendency of a suit involving certain property given to one who expects to deal in it is as effectual as would be the filing of a notice of *lis pendens,* yet that does not extend to the point of holding that notice so given that a thing was involved in a certain suit, which was not in fact involved or described in such suit, was of any effect. Notice of a fact that does not exist cannot bind any one. 27 L. R. A. 449; 31 S. C. 527. There was no express agreement as to the duration of the time the partnership should last. By implication it was to cease when the lease that was jointly owned by Batson and Drummond terminated. 227 U. S. 57 Law. ed. 608. The suit pending was notice to Harland that the lease for the year 1922 was jointly owned by Batson and Drummond, that they were partners in the operation of the hotel under that lease, and that Batson owned a half interest in the furniture and fixtures, etc. It could not have been construed as notice that Batson claimed any interest in a lease for 1923. 8 Barb. 122, 27 L. R. A. 467, note, 1st col.; 12 Jones & S. 116; Collyer on Partnership, par. 160; 27 L. R. A. 483, note, 1st col.; 50 Mich. 401; 27 L. R. A. 484, note, col. 2.

3.    The procedure adopted against Harland amounted to depriving him of his property without due process of law. 47 L. R. A. 744. See also 42 Mich. 272; 124 Fed. 61; 84 Cal. 327; 103 Cal. 297; 113 Ky. 751; 64 Fed. 443; 83 Ill. App. 514; 16 How. Pr. 527. The

proceeding was summary, instead of a suit in equity wherein the issues between Harland and the receiver could be tried out apart from the rights of the other parties in the main proceeding. 107 Fed. 898, 899.

*McKay & Smith, Mahony, Yocum & Saye,* and *J. N. Saye,* for appellee.

1. The partnership owned the lease for 1923. All assets of the partnership which the plaintiff seized and converted to his own use remained partnership assets. Plaintiff held them as trustee for the use of the firm. The trust as to the use of the partnership property remained attached to the lease, as well as the other assets, since a part of the value of the lease was the expectation of renewal, a thing which is deemed so actual and vital that when a new lease is had it is considered to be a graft on the old. 63 How. pr. 401; 16 R. C. L., § 413; 20 R. C. L. 880, § 93; note 32 L. R. A. (N. S.) 869; 12 Jones & S. 116; 61 Barb. 310; 18 Pick. 68; 17 Ves. Jr. 299; 18 Deg. M. & G. 787; 2 Deg. M. & J. 173; 1 Macn. & G. 294; 51 N. Y. 357; *Id.* 274; 115 Pa. 129; 37 Pa. 360; 28 Am. Dec. 430; 3 Sandf. Ch. 131; 27 L. R. A. 483-4, note; 53 Ark. 152.

2. The alleged sale from the plaintiff to Harland was void as to the defendant. This was a non-trading partnership. All of the property was employed in the business, and the latter could not be run without the property. Hence, one partner could not sell it, even to an innocent purchaser, without the consent of the other. 1 Rowley, Modern Partnership Law, § 44; *Id.,* § 552; 20 R. C. L. 983. The intervener therefore was a trespasser when he took possession.

3. The intervener was not an innocent purchaser. He had actual knowledge of the pendency of the litigation between plaintiff and defendant, and purchased with knowledge thereof. He is bound by the subsequent orders and decrees of the court with reference thereto. Actual notice destroys the necessity of a *lis pendens.* 50 Ark. 305; 84 Ark. 282; 118 Ark. 144; 75 Ark. 228; 122 Ark. 449; 128 Ark. 403. The plaintiff and the intervener

should be treated as one in determining what defendant's rights are in the subject-matter of this litigation. 227 U. S. 489.

4. It was error to allow the plaintiff $2,500, and the intervener $750 as compensation for conducting the business while the litigation was pending. Defendant has a partner's lien upon the shares of plaintiff and intervener in the property, business, profits and surplus, to secure payment of his share of the profits and surplus, and that lien is superior to any right, title, interest or equity that the plaintiff and interest may have therein. 2 Rowley, Modern Partnership Law, § 669; 1 *Id.,* § 371; 20 R. C. L. 1030, § 273; *Id.* 1032, § 274; 26 U. S. 585.

5. The argument that intervener is being deprived of his property without due process of law is frivolous. If he had not voluntarily intervened, it would have become the duty of the court to bring him in. C. & M. Digest, § 1101.

HART, J., (after stating the facts). It is the contention of counsel for appellants, N. W. Drummond and R. E. Harland, that S. H. Batson is not entitled to share in the profits from operating the hotel after the 31st day of December, 1922; that he is not entitled to share in the new lease, secured by Drummond from Garrett for the hotel during the whole of the year 1923; and that he is not entitled to share in the profits made by R. E. Harland while he was operating the hotel from the 3d day of February, 1923, until the 1st day of May, 1923, when the receiver took charge of the hotel.

As we have already seen, it was held, upon the former appeal, that a partnership in the operation of the hotel existed between Drummond and Batson, and this is the law of the case.

It is first insisted that, inasmuch as the term of the original lease expired on the 31st day of December, 1922, this fixed a time for the termination of the partnership between Drummond and Batson, and that thereafter Batson is not entitled to receive any share in the profits derived from the continued operation of the hotel by

Drummond or Harland. Treating the 31st day of December, 1922, as the time limit for the termination of the partnership between Drummond and Batson, we cannot agree with the contention of appellants that, under the facts of the case at bar, Batson is not thereafter entitled to share in the profits derived from running the hotel by Drummond and Harland.

On the former appeal it was held that Drummond wrongfully excluded Batson from any participation in the partnership business, and it was found that he continued to operate the hotel, using the partnership property, after he had denied that Batson was a partner and had excluded him from any voice in running the business or sharing in the profits thereof.

In *Hartman* v. *Woehr*, 18 N. J. Eq., 383, it was held that a partner, excluded from the business of the firm by the illegal acts of his copartner, is entitled to an account of profits, and to his share of them, until the partnership is legally dissolved, and is entitled to a decree of dissolution on the ground of such illegal exclusion from the business.

This principle was approved in *Karrick* v. *Hannaman*, 168 U. S. 328, where it was said that, in a court of equity, a partner who, after a dissolution of the partnership, carries on the business with the partnership property, is liable, at the election of the other partner or his representative, to account for the profits thereof, subject to proper allowances.

Again, in *Zimmerman* v. *Harding*, 227 U. S. 489, it was held that a partnership for a fixed duration can only be dissolved for sufficient cause shown to the court, and one attempting to dissolve the partnership before the fixed termination and to exclude the other from participation, must account to the latter for his share of the profits until the court decrees a dissolution in a suit brought to dissolve. The court further held that, where one party attempts to illegally dissolve a partnership without suit, and subsequently the other brings a suit for dissolution in accordance with the statute, the former

must account for all the profits until the final decree of dissolution.

That case is in many respects similar to the case at bar. There Harding made an agreement to lease a hotel upon the condition that he associate with himself another person satisfactory to the lessor. Harding then arranged with Mrs. Zimmerman to join in the lease and to form a partnership to operate the hotel. The agreement of partnership was never reduced to writing, and there was no express stipulation as to its duration. The partners obtained a lease of the hotel for the term of two years, with the right of renewal for another term of two years. Thereupon the partnership took possession of the hotel and began to operate it. The business ran along with a profit for about seven months, when Mrs. Zimmerman, during the absence of Harding upon a vacation, assumed to dissolve the partnership. She assumed entire possession of the business, and Harding was excluded from all possession and all benefits of the partnership. Harding first brought an action at law against Mrs. Zimmerman to recover damages for the breach of the partnership contract. Subsequently he dismissed his action at law, without prejudice, and filed a bill in chancery to obtain a decree of dissolution and an accounting of the partnership affairs. He asked for the appointment of a receiver, which was resisted by Mrs. Zimmerman and denied by the court. Mrs. Zimmerman remained in full control of the hotel business until the date of the final decree dissolving the partnership. The partnership property, including the unexpired term of the lease, was sold under orders of the court, and the final result was that Harding was allowed his share in the proceeds of the business, including the profits realized to the date of the sale. The court said that, whether the partnership had been effectually dissolved by the declaration of Mrs. Zimmerman to that effect or not, her action in excluding Harding from joint possession and control until the affairs had been wound up was, upon either hypothesis, wholly indefensible.

The reason given was that the partnership property continued to be partnership property after as well as before dissolution. The court, on this point, further said:

"When she assumed the right to take possession for herself and to carry on the business with the partnership property, Harding had a clear right to call her to account for his share in all of the joint property, and, at his election, to require her to account for the profits, by way of damages or otherwise, which he had been prevented from making by his wrongful exclusion from the business. *Ambler* v. *Whipple,* 20 Wall. 546; *Pearce* v. *Ham,* 113 U. S. 585, 593; *Karrick* v. *Hannaman,* 168 U. S. 328, 337; *Holmes* v. *Gilman,* 138 N. Y. 369."

Again, the court said that Harding had sought to have the business wound up by a receiver, which Mrs. Zimmerman prevented, and she was suffered to remain in sole possession. Therefore she could not complain because she had been held to account for the profits made during that time.

We think this principle is in accord with our own decisions bearing upon the subject. In *Bernie* v. *Vandever,* 16 Ark. 616, it was held (quoting from the fifth syllabus): "Where one of two partners dies, if the surviving partner, instead of settling the partnership property, uses it in carrying on the business, the representative of the deceased partner may, at his election, claim an interest, according to the principles of equity, in the subsequent profits, or take interest upon the amount due him, after a full settlement of the partnership debts, at the time of the dissolution."

The reason is that, while the partnership is, for most purposes, dissolved by the death of one of the partners, still a community of interest remains in the partnership effects on hand at that time until they are disposed of. The surviving partner has the right to wind up the affairs of the partnership and distribute its proceeds. He has no right, however, to continue to use the property and effects of the firm in carrying on the busi-

ness, and, if he does so, the representative of the deceased partner, at his option, may require him to account for the value of the deceased partner's interest in the partnership, or to account for the profits he has made by the wrongful continuation of the partnership by the use of the partnership effects after one of the partners had died.

Again, the principle was recognized in *Drake* v. *Thyng,* 37 Ark. 228. In that case the court held that one partner cannot, without the consent of the other, dispose of the partnership business and its effects, because such course would be contrary to the object and design of the partnership. The court further held (quoting from second syllabus): "When a partner, in the absence of his copartner, who has furnished the capital, sells the partnership effects and business at a sacrifice, to parties having knowledge of the interest of the copartner, and when there is no necessity for the sale, a constructive trust will attach to the property in the hands of the purchasers, and, as trustees, they and the vendor will be held to rigid accountability to the copartner."

There was no decree of dissolution of the partnership until the receiver was appointed on the first day of May, 1923. During the existence of the partnership between Drummond and Batson, Drummond took sole charge of the partnership business, and excluded Batson from any share in it. This was held to be wrongful, upon the former appeal in the case, and it would be contrary to the plainest principles of equity to allow Drummond to continue to use the property and effects of the partnership for his own benefit before making settlement of the partnership affairs. He wrongfully carried on the business by the use of the partnership property and effects. The profits made by such trading must be brought into account with the original firm, and Batson, at his option, may claim his share of the profits, instead of merely bringing suit for damages for a breach of the contract of partnership. Drummond, by wrongfully excluding Batson from participation in the partnership

business, and by continuing the business with the joint property of the firm, did so at his own risk, and cannot now complain of the result caused by his own wrongful act.

It is next insisted by counsel for appellants that, inasmuch as the original lease did not provide for a renewal for another term, Drummond had the right to take a new lease in his own name and for his own benefit, to begin at the expiration of the original lease.

In *Mitchell* v. *Reed*, 61 N. Y. 123, it was held that one member of a partnership cannot, during its existence, without the knowledge of his copartners, take a renewal lease for his own benefit, of premises leased by the firm, although the term of the renewal lease does not begin until after the copartnership has expired by its own limitation.

The court further held that a lease so taken by one partner in his own name inures to the benefit of the firm, and that the partner in whose name it is taken can be required to account to his copartners for its value.

Upon the second appeal in the same case, it was held that the fact that a lease of premises used by the firm for partnership purposes to one of the partners does not authorize him to take a renewal lease in his own name and for his own benefit; and that a renewal will inure to the benefit of the firm. *Mitchell* v. *Reid*, 84 N. Y. 556.

One of the reasons is that, where there is a lease of partnership property, the good will of the business enters into the value of the lease and affects the amount of the purchase price; and the new lease became a part of the good will of the business. Hence it was held that the partner who had been deprived of the benefit of the lease by the action of his copartner in taking a renewal lease in his own name could recover the value of his interest in the lease as a part of his damages.

In *Knapp* v. *Reed* (Neb.), 32 L. R. A. (N. S.), 869, it was held that, when a partnership is carrying on business in premises which it holds under a lease, neither partner can, without the consent of the other, take a

renewal of the lease in his own name, and so exclude the other partner and secure the good will of the business for himself.

It was further held that, if one partner takes such renewal, it will inure to the benefit of both partners, and each will have an interest in the new lease.

This case is also reported in Ann. Cas. 1912-B, p. 1095, and in the case-note, at page 1100, it is said that the earlier cases are very numerous in which courts of chancery have recognized the tenant's reasonable expectancy of renewal as a property or asset, and have laid down the rule that, if one standing in a fiduciary or *quasi*-fiduciary relation to a lessee secures a renewal of the lease to himself, the new lessee will be treated as holding the lease in trust for the original lessee. The rule is applicable to partners, managing officers of corporations, and other trustees. The reason is that one occupying a fiduciary relation to another is held to the utmost fairness and honesty in dealing with the party to whom he stands in that relation. If one person becomes interested with another in a business, he is prohibited from using the common property for acquiring rights in other property antagonistic to his partner, except with the full knowledge and consent of the latter. See also *Robinson v. Jewett,* 116 N. Y. 40, 22 N. E. 224, and *McCourt v. Singers-Biggers,* 145 Fed. 103, 7 Ann. Cas. 287, and note at 297.

In *Pike's Peak Co. v. Pfuntner* (Mich.), 123 N. W. 19, the court held that, although a tenant, in the absence of an express agreement, has no enforceable right to a renewal of a lease, yet his expectancy of being permitted to renew is a valuable property right which will be recognized in law. Several well-considered cases are cited, which support the holding. The renewal of the lease, in equity, is regarded as a continuance of the original lease, so far as concerns the legal and equitable rights of those who had an interest in the old lease.

In *Johnson's Appeal,* 115 Penn. 129, it was said that, when a lease is held by a partnership, the chance or

opportunity of renewal is in itself a distinct asset of the partnership, in which all the partners have an interest. Therefore it was held that one partner cannot take a new lease, or a renewal of an existing one of the firm, in his own name, or for his own benefit, without being liable to account for it to the partnership.

It was further held that the dissolution of the partnership does not annul or change the relation of the former partners in relation to the right of the renewal of a partnership lease. The reason is that, even after dissolution, the original lease remains partnership property for the purpose of liquidation, and the obligation of each partner to deal with it for the joint interest of the other partners remains.

In all such cases this expectation of renewal is a part of the partnership assets, to be accounted for in winding up and settling the partnership affairs, just as other property of the partnership. Of course, where the elements of fiduciary relationship and concealment or bad faith are lacking, the rule has no application.

In *Sneed* v. *Deal*, 53 Ark. 152, this court held that, where two partners, without the knowledge or consent of the third partner, cancel a partnership lease and renew it in their names and for their individual benefit, and sell their name and interest in the firm's business and assets to such third partner, he becomes the owner of the lease.

Partners are bound to conduct themselves with good faith towards each other, and the partnership property cannot be used for the private gain of one of the partners to the exclusion of the other. This salutary rule applies with peculiar force to a case like the present one. Drummond took sole possession and control of the partnership business during the life of the original lease, and excluded Batson from any participation in the partnership affairs. This put him in the exclusive possession and control of the management of the hotel, which could only be run by the use of the partnership property. It was a large-sized hotel, and it cost a good deal to buy

furniture, fixtures, and other property with which to operate it. There was an oil boom in El Dorado at this time, and it is fairly inferable that the value of a lease of hotel property was increasing rapidly. This is evidenced from the increased rental which the owner of the hotel received from Drummond in the new lease. It is evident that Drummond secured the preference in getting the new lease because he was in sole control of the hotel and of the property used in running it. He wrongfully obtained this control during the term of the original lease and during the life of the partnership, and he cannot, by his wrongful acts in this respect, dispose of a valuable asset of the partnership without accounting to Batson. If the expectancy of a new lease was an asset of the partnership, and if Drummond was enabled to secure the new lease in his own name because he had sole control and possession of the partnership property, he must account to his copartner for his interest in the new lease. Therefore the court properly ordered this to be sold by the receiver as part of the partnership property in winding up the partnership affairs.

The decree in this respect is as binding upon Harland as upon Drummond. It will be remembered that Harland took possession of the hotel on the 3d day of February, 1923. He was allowed to file an intervention in this suit on the 25th day of April, 1923, in which he claimed an undivided one-half interest in the property used in operating the hotel, and also claimed to own the lease for the year 1923 by assignment and transfer from Drummond. Harland claims to be an innocent purchaser; but in this contention he is not sustained by the facts. It is shown by a preponderance of the evidence that he knew of the litigation between Drummond and Batson about the hotel property and the lease. He was expressly told about it by the attorneys for Batson, and purchased it with a full knowledge of the claim of Batson. This made him a constructive trustee of it as part of the partnership property, and he, as well as Drum-

mond, should be held to a rigid accountability to Batson. *Drake* v. *Thyng,* 37 Ark. 228.

It is true that no *lis pendens* was filed under the provisions of § 6979 of Crawford & Moses' Digest. This did not make any difference. That section of the Digest deals with the subject of constructive notice, and not actual notice. This court has held that the section in question does away with the common-law and equity rule of *lis pendens,* and provides that a suit affecting the title or a lien on real estate is not *lis pendens* until the notice of the pendency of the action is filed in accordance with the statute. *Henry Wrape Co.* v. *Cox,* 122 Ark. 445. One who purchases, having actual notice of the pendency of the suit, cannot avail himself of the failure to give the *lis pendens* notice required by the statute. *Jennings* v. *Bouldin,* 98 Ark. 105, and *Ziegler* v. *Daniel,* 128 Ark. 403.

But it is contended that there was no suit pending with regard to the new lease at the time Drummond transferred it to Harland. The suit between Drummond and Batson for an accounting and settlement of the partnership affairs was pending in the Supreme Court at that time, and, under our holding above, Drummond, in taking the new lease to himself, became a trustee to hold the same for the benefit of the partnership, and as an asset thereof, upon the dissolution of the partnership. Hence it was involved in the suit between Drummond and Batson, which had for its object the winding up of the partnership affairs and distributing the assets thereof.

As we have already seen, a clear preponderance of the evidence shows that the attorneys for Batson had fully explained to Harland Batson's claim in the matter, and Harland cannot, in any sense, be considered a *bona fide* purchaser. He is therefore held to the same accountability as a trustee as Drummond, and the facts bring him within the principle that a trustee cannot profit from the estate for which he acts.

The chancellor allowed Drummond and Harland a reasonable salary for managing the business while it was

in their hands. It is claimed that, because Batson was wrongfully excluded from any participation in the partnership, he should not be charged with this expense. We do not agree with counsel for appellees in this contention. Batson has elected to share in the profits up to the time of the sale of the partnership property. It was necessary for some one to manage the partnership affairs. No complaint is made that either Drummond or Harland mismanaged the business while it was in their hands. Their services inured to the benefit of the partnership, and were necessary to the successful operation of it. He who seeks equity must do equity. Therefore we are of the opinion that, under the circumstances of this case, the chancellor did not err in allowing Drummond and Harland a reasonable sum for their management of the partnership business.

The master made a detailed account of the partnership affairs from the time that Batson was excluded from any participation therein until the date of the sale thereof by the receiver. The receiver also filed a report of all his proceedings, including the sale of the property. After making all proper allowances, the chancellor made a division of the proceeds according to the respective interests of the parties as defined in this opinion. His order of distribution was practically made under the principles of law herein announced. No useful purpose could be served by setting out all of these amounts or the particular state of the account in detail in the opinion.

It follows that, under the views we have expressed herein, the decision of the chancellor was correct, and the decree of the chancery court will be affirmed.

REHEARING OPINION.

Hart, J. Both parties have filed motions for a rehearing, and, in the main, have followed the line of argument made in their original briefs. We can see nothing in their arguments to cause us to change the rulings made in our original opinion.

Counsel for appellee, in their motion for a rehearing, lay special stress on the case of *Cole* v. *Cole,* 119

Ark. 48. They contend that, under the principles of law laid down in that case, the court erred in allowing compensation for running the hotel after Batson was ousted from any participation therein.

In the Cole case there were three partners, and the partnership became dissolved by the death of one and the insanity of another. There was no dispute whatever about the terms of the partnership or the compensation that each one was to receive. The third partner continued the partnership on his own motion without any claim of right to do so, and we held that, under the circumstances, he was not entitled to extra compensation.

In the case at bar the court recognized that the partners stand in a fiduciary relation to each other, and that, if one partner, instead of winding up the partnership affairs, at its dissolution, continues to use the partnership property in business and makes a profit thereon, he must account for it.

We further held that, under the peculiar facts of this case, in stating an account between the partners it was equitable to allow Drummond an allowance for his time and business ability, which largely contributed to the success of the business. This is a well known exception to the general rule and has been well stated in *Rowell* v. *Rowell*, 122 Wis. 1, as follows:

"The court recognized the principle that, while surviving partners, in closing up the affairs of the firm, are not entitled to compensation for services, yet, when those interested in the estate elected to demand not only the fair value of their interest, but also a share in the profits earned by the use of the whole property, a court of equity will inquire to what extent the profits of the business are attributable to the personal services of those conducting it, and, if some share or sum is proved so to be, with reasonable certainty, will allow that, on the theory that those who seek equity must accord it, also that profits due to such services are not due to the property. This is, of course, subject to the consideration that

they who have wrongfully appropriated property of another by mingling and confusing it with other things must bear the burden of proving with reasonable clearness and certainty what part of the ultimate general result is due to other sources than the misappropriated property.''

Several decisions are cited to support the ruling.

In the present case there was a dispute between Drummond and Batson as to whether a partnership existed between them. It is true that we held that the relation existed, and that Drummond was a wrongdoer in ousting Batson from the partnership business. The testimony, however, was sufficient to warrant Drummond in testing his rights in the courts, and we are of the opinion that, under the circumstances of this case, Drummond and his vendee should be allowed a reasonable compensation for their successful management of the hotel.

In this connection it may be stated that the receiver continued to manage the property successfully during the time he had it in charge, and, for the reasons stated above, the cost of the receivership should be equally borne between Drummond and Batson. A master was appointed to state an account between the parties. It does not appear that Drummond in any manner undertook to conceal the state of the account between them. Drummond simply claimed that Batson was not entitled to share in the profits because he was no longer a partner. After the court held that Batson was his partner, it does not appear from the record that Drummond interposed any obstacles in the way of accounting. Therefore we believe that the cost of accounting was also a proper charge against the partnership profits, and that the costs thereof should be equally borne by the parties. No contest is made as to the amounts allowed the master or the receiver. As we understand the decree of the chancery court, the cost of the receivership and of the accounting was taken out of the partnership funds, and

the balance was ordered distributed under the principles of law announced in our original opinion.

It follows that the motion for a rehearing will be denied.