FILBRUN, *Appellant*, v. IVERS.

1. **Partnership**: RIGHTS AND DUTIES BETWEEN PARTNERS.  The rights and duties of partners, as between themselves, are to be governed by the rules applicable to trustees and agents, and the trust relation which exists between them is not terminated with the dissolution of the partnership, but continues until a final adjustment and settlement of the partnership affairs.

2. ———: ———.  Where a partner, after dissolution, but before settlement of the partnership affairs, buys the paper of the firm, the liability of the partnership to him alone will only be the amount paid by him for the note, and not its face value.

3. ———: ———.  Where there are doubts concerning claims and transactions between the partnership and its members, they should be resolved in favor of the partnership, as against the individual members.

4. **Practice**: REPORT OF REFEREE : FINAL SETTLEMENT OF PARTNERSHIP.  It is the duty of the trial court to dispose of the issues in a cause, and in a suit to settle the affairs of a partnership, it should, upon the report of the referee, so dispose of the assets of the firm, either by order of sale, or partition, or otherwise, as to make a complete and final settlement between the parties.

*Appeal from Cape Girardeau Circuit Court.*—HON J. D. FOSTER, Judge.

REVERSED AND REMANDED.

*R. L. Wilson* and *Oliver & Limbaugh* for appellant.

(1) The relations of plaintiff and the defendant to each other being that of partners, the utmost good faith was required of them in all business transactions pertaining to the partnership; each was trustee for the other in the management of the partnership affairs. 1 Story's Eq. Jur. [8 Ed.] secs 321, 322, 323; Story on Part. [5 Ed.] secs. 174, 348; *Jamison v. Glasscock*, 29 Mo. 191; *Pomeroy v. Benton*, 57 Mo. 531. And this relation of trust is not terminated by a dissolution, but continues till a final adjustment of the partnership affairs. Story on Part. [5 Ed.] secs. 325, 331, and cases cited, and 348; 1 Story's Eq. Jur. [8 Ed.] secs. 315, 316, 316$a$. (2) It was the duty of the referee, in stating the account, to charge each partner with all amounts by him collected, on account of the partnership, subsequent to the retirement of Filbrun from the firm. Story on Part. [5 Ed.] sec. 348. It was the duty of the referee, in stating the account, to charge Ivers with the amount of the freight bills collected by him. (3) The judgment rendered herein is not responsive to the issues in this suit. This is an action in equity to settle the partnership accounts and transactions of plaintiff and defendant. It was the duty of the court to make a final disposition of all the issues arising herein, and upon its approval of the report of the referee, to so dispose of all the assets of the firm as to make a complete and final settlement between plaintiff and defendant. *Hodges v. Black*, 76 Mo. 537; Story on Part. [5 Ed.] sec. 347, and note 1, p. 551. When a court of equity once obtains jurisdiction of a cause, it will retain the same to do full and complete justice between both the parties. *Corby v. Bean*, 44 Mo. 373. By overruling the objections of plaintiff to the referee's report, the court approved

thereof. *Pomeroy v. Benton*, 77 Mo. 65. (4) In this case the referee has reported to the court all the evidence upon which his report is made. When this is done this court will review and correct his finding. *Ely v. Ownby*, 59 Mo. 437; *Shore v. Coons*, 24 Mo. 556; *Perry v. McGuire*, 31 Mo. 287. There was no evidence to support the finding, and this court will reverse if the finding is against the law. *Moore v. Hutchinson*, 69 Mo. 429.

*Lewis Brown* for respondent.

RAY, J.—This action was brought to settle the mercantile partnership entered into between plaintiff and defendant in 1863, under the name and style of Filbrun & Ivers, and continued until July, 1880, when the same was dissolved. Plaintiff, Filbrun, at this date went out, leaving defendant, Ivers, in possession and control of the store, goods, notes, book accounts, etc. There was no adjustment of the accounts of said firm, or of the individual accounts of plaintiff and defendant with said firm at the time of said dissolution. Defendant, Ivers, continued, from said July, 1880, to carry on the business until May, 1882, when this suit was begun, and a receiver appointed, who, thereupon, took possession of the partnership stock. After the pleadings were made up in said cause a referee was appointed, by order of the court, to state the account between said parties. The report of the referee filed in the cause was as follows:

"I find from the books of the late firm and evidence as follows:

Filbrun v. Ivers.

## RESOURCES.

| | | |
|---|---:|---:|
| Due them on personal accounts, per petty ledger............................................ | $ 1,144 | 37 |
| Due them on personal accounts, per general ledger........... ...... ..................... | 2,089 | 76 |
| Bonds, notes and stock on hand............ | 5,017 | 99 |
| Freight bills due by sundry persons........ | 61 | 55 |
| Proceeds from sale of property reported by receiver................................. | 969 | 88 |
| Due from John Ivers on open account........ | 9,079 | 05 |
| Due by John H. Filbrun on open account.... | 6,504 | 43 |
| Total................................. | $24,907 | 03 |

## LIABILITIES.

| | | |
|---|---:|---:|
| Due John Ivers amount account paid Cape County Mills............................$ | 144 | 15 |
| Due John Ivers for amount due on a promissory note for $4,000, dated January 9, 1880, payable to the order of Henry Kiel, signed by the president and treasurer of the Union Mill Co., indorsed by Filbrun & Ivers................................. | 4,689 | 75 |
| | $ 4,833 | 90 |

Total resources......................$20,073 13."

Objections and exceptions thereto were filed by plaintiff, which were overruled by the court, and judgment based on said report was given for defendant in the sum of $1,149.20, from which plaintiff has appealed.

In the said report of the referee, it will be perceived defendant, Ivers, is given credit for $4,689.75, the full amount of principal and interest then due on the Kiel note, and the principal exception to the report and judgment entered thereon, is in respect to this

credit. As to this note the facts seem to be about as follows : Said firm of Filbrun & Ivers was, with other parties, interested in the Union Mill Company, a company engaged in the manufacture and sale of flour. Said Filbrun, it seems, was the president, and said Ivers secretary, of said mill company. In January, 1880, said mill company, by its said president and secretary, executed the following note, which is the one referred to in the cause :

"$4,000.00.          Cape Girardeau, Mo., Jan. 9, 1880

" Six months after date, we promise to pay to the order of Henry Kiel, four thousand dollars for value received, negotiable and payable without defalcation or discount, with interest from date at the rate of ten per cent. per annum.

'[Signed.]                    JOHN H. FILBRUN,
                        "Pres. Mo. Union Mill Co.

" JOHN IVERS, Secretary."

Said note was endorsed by the said firm of Filbrun & Ivers, and, after the dissolution of the partnership, and before this suit was brought, said Ivers purchased said note from Meystedt, the owner and holder thereof, and, as we have said, the referee, in his report, gives said Ivers a credit therefor, in the amount of the face value and the accrued interest.

The relations of plaintiff and defendant being that of partners, their rights and duties, as between themselves, are to be governed by the rules applicable to trustees and agents, and the trust relation, which exists between them, is not terminated with the dissolution, but continues until a final adjustment and settlement of the partnership affairs is had. Story on Part. [5 Ed.] secs. 174, 348 ; *Pomeroy v. Benton*, 57 Mo. 531.

Application of these rules and principles would entitle defendant, Ivers, to a credit only in the amount actually paid by him for the said note. In this behalf,

Filbrun v. Ivers.

the testimony of Ivers was, in substance, that he paid Meystedt, the holder and owner of the note, two hundred and fifty dollars in cash, and certain commissions on sales of meat which he made for Meystedt, between the months of October, 1880, and April, 1881. The usual charge for such commission, as he testifies, was two and one-half per cent. for buying, and the same for selling. He testified that he bought more than ten thousand dollars' worth of meats for Meystedt, but would not testify that the amount so purchased was as much as fifteen thousand dollars. So that, in any event, upon the theory of his testimony, allowing him five per cent. on the largest amount, fifteen thousand dollars, his commissions would amount to seven hundred and fifty dollars, and the two hundred and fifty dollars paid in cash would make the note cost him, and the sum actually paid therefor, not to exceed one thousand dollars. So that taking this as the testimony of Ivers, in this behalf, and accepting the same as correct, the liability of the firm to Ivers, on account of said note, should have been taken as of the amount so paid, in fact, instead of the face value of the note and accrued interest. But, taking the testimony of Ivers, himself, in its entirety, it is not at all clear that there was, even according to him, any consideration for the Kiel note, beyond the two hundred and fifty dollar cash payment. He also testified that he had no contract or bargain with Meystedt as to buying or selling the meat; that, during the time he was so engaged, Meystedt paid him no commissions, and that nothing was ever said, by either of them, in that behalf; and, when asked what conversation passed between him and Meystedt at the time he paid the money for the note, he answered that the purport was, that if he would give Meystedt two hundred and fifty dollars, Meystedt would call everything straight between them, and that nothing was said about commissions.

On the other hand, Meystedt testified that defendant, Ivers, paid him two hundred and fifty dollars, in cash, for the note, and paid nothing else. He further says that Ivers bought the meat from him, and paid him for it before it was shipped, and that Ivers sold the same for himself, and not for Meystedt. We should also observe that something is said in his evidence about certain accounts against him being settled on the books. These accounts were due the firm of Filbrun & Ivers, and said mill company, and cut no figure in determining what the note cost Ivers, for the reason that his interest therein was no greater than Filbrun's.

Upon the question as to what was paid for the said note, said Meystedt is the more disinterested witness; his testimony is given more positively, and under less reserve and qualification; and, further, the rule is, that if there are doubts in and about such claims and transactions, they are to be resolved in favor of the partnership, as against the individual members.

Under this evidence, two hundred and ten dollars should, we think, be taken as the sum Ivers actually paid for the Kiel note, and he should be given a credit in that amount, on account of said note, and not in the amount of the note, and interest thereon, as was done in said report and judgment. The other item of $144.15, for which Ivers was given credit by the referee, is not disputed, so that, upon this basis, which we deem correct, the total liability of the firm to said Ivers should be the sum of $344.15, instead of the total sum of $4,833.90, so found and stated by the referee. It appears from the said report of the referee that there was due the said firm, on the open account of said Ivers, a sum of $2,534.62, in excess of that due the firm on the open account of plaintiff, Filbrun, so that, after crediting this sum with the said $344.15, paid by Ivers, defendant, Ivers, would still be indebted to the firm in the sum of $2,190.47, and plaintiff would,

therefore, be entitled to a judgment in his favor for one-half of said sum, which would be $1,045.23, and it is, accordingly, so ordered by this court.

Again, it was the duty of the trial court to dispose of the issues in the cause, and upon approval of the report of the referee, to so dispose of the assets of the firm as to make a complete and final settlement between the parties. By its approval of the report of the referee, the court must have found the resources of the firm to be as therein stated. This report shows resources of the firm of the apparent aggregate value of more than eight thousand dollars, of which some disposition, either by order of sale, or partition in kind, or otherwise, should be made. Story on Part. [5 Ed.] 531.

For this purpose, the cause will be remanded, to enable the parties and court to take such further action in the premises as may be required in that behalf. All concur.