KOEHLER *v.* HUNTER.

## Opinion delivered July 14, 1924.

1. PARTNERSHIP—ACCOUNTING.—In a suit for dissolution of a partnership and an accounting, evidence *held* to support a finding that defendant was indebted to plaintiff for an advancement for joint purchase of a gold mine.

2. PARTNERSHIP—ADVANCEMENT TO PARTNER—INTEREST.—Where one of two partners made an advancement to the other, he was entitled to interest at the legal rate from date of the written contract acknowledging the indebtedness.

3. PARTNERSHIP—DIVISION OF ASSETS.—Upon a dissolution of a partnership, where the assets were insufficient to repay the amounts advanced by the partners toward the enterprise, the court properly divided the assets in proportion to the advancements made by the partners.

4. PARTNERSHIP—SALARY OF MANAGING PARTNER.—A partnership agreement covering a gravel business which provided that the managing partner should not receive a salary until "the company is ready to begin the actual business of mining gravel" contemplated that he should receive a salary when the actual operation of the gravel plant should begin.

5. PARTNERSHIP—SALARY OF MANAGING PARTNER.—A partner who managed the business without agreement as to the amount of his salary, but with the understanding that he was to be paid, was entitled to the reasonable value of his services.

Appeal from Craighead Chancery Court, Western District; *Archer Wheatley,* Chancellor; reversed in part.

*J. F. Gautney,* for appellant.

The court erred in refusing to grant Koehler a salary. Where there is an express agreement to pay a salary or where it can be fairly and justly implied, from the course of dealing between the partners, that one partner is to be compensated for his services, his claim will be sustained. 64 Wis. 111; 54 Am. Rep. 593. Where one partner is intrusted with the management of the partnership business, and, at the instance of his copartners, devotes his whole time and attention to it, the case is taken out of the general rule, and the law implies an agreement to pay the active managing partner for his services. 166 Pac. 235; L. R. A. 1917F, 571; 162 N. W.

118; 33 S. E. 289. Where one agrees to pay a certain sum from profits realized through the performance of a contract, the failure to realize profits relieves the promissor. 29 App. (D. C.) 571; 6 Hun. 264; 25 Ark. 64.

*L. C. Going,* for appellee.

A court of equity may dissolve a partnership where all confidence between the partners has been destroyed. 20 R. C. L. § 182; 5 Ark. 270; 40 S. W. 342; 9 Kan. 435; 68 N. W. 980; 4 Ann. Cas. § 180. There was no error in the court's refusal to allow Koehler a salary for his services. 119 Ark. 148; 117 S. W. 915.

HUMPHREYS, J. This suit was brought on November 12, 1921, in the chancery court of Craighead County, by appellee against appellant for the dissolution, accounting, and division of the assets of a partnership organized on December 10, 1919, for the purpose of mining and selling gravel. The opening and operation of the gravel pit involved the construction of a mile and one-half of railroad and the purchase of expensive machinery. It was provided in the articles of copartnership that appellant and appellee should advance money for this purpose not to exceed $33,000, in the proportion of one-third by appellant and two-thirds by appellee. Each advanced more than the maximum provided for in the contract. The venture was unsuccessful, so, when this suit was brought, a receiver was appointed to take charge of the concern and operate it during the pendency of the suit. At the receiver's sale the assets sold for $22,500 and the assumption by the purchaser of the unpaid commercial debts of the concern amounting to $15,500. The proceeds derived from the sale of the assets were insufficient to repay appellant and appellee the respective amounts advanced by them, so, after ordering the receiver to pay the costs of the receivership and adjusting the various items of debit and credit between the partners, the trial court ordered that the excess be divided between them in the proportion of two-thirds to Hunter and one-third to Koehler. In the audit of the account between them the court refused to allow appellant, as an

overpayment on his contribution to the partnership, the $6,800 claimed by him as a salary at $400 per month from June 1, 1920, to November 1, 1921, for managing the business, and allowed appellee an item of $8,165.10 for an interest which he claims to have sold appellant in the Gold Dust Mining Claim in Colorado. An appeal has been prosecuted to this court for the purpose of challenging the correctness of the ruling of the trial court as to these items and the proportion in which the assets were divided between the partners.

Appellant contends that the finding of the trial court, to the effect that he was indebted to appellee in the sum of $8,197 or the interest in the Gold Dust Mining Claim, is contrary to the weight of the evidence.

Appellant testified that appellee owned a two-thirds interest and he a one-third interest in a gold mine at Breckenridge, Colorado, and that he agreed to pay appellant $8,197 for a full one-half interest therein, so as to make them equal owners, in case he made it out of the gravel pit; that he was not to take a half interest in said gold mine unless he could pay for it out of the profits derived from the operation of the gravel pit.

Appellee testified that he and appellant purchased the gold mine together, and that he advanced $8,197 to appellant on his part of the purchase price, for which amount he executed a note; that on December 24, 1919, the note was surrendered, and that he and appellant entered into a contract in which the indebtedness was admitted, and whereby one-half of the profits to be realized in the operation of the gravel pit was pledged to secure the payment of the amount.

The contract referred to contains the following recitals:

"Whereas, C. W. Hunter and Paul Koehler, of Memphis, Tennessee, jointly owned what is known as the Gold Dust Mining Claim, located near Breckenridge, Colorado, and, while the ownership is intended to be in equal shares, said C. W. Hunter has advanced and put in said business the sum of twenty-one thousand and four hundred

sixty-two and 30/100 ($21,462.30) dollars, while the said Paul Koehler has advanced and put in said business the sum of five thousand one hundred thirty-two and 10/100 ($5,132.10) dollars, and,

"Whereas, it is the intention and desire of said Paul Koehler to secure to the said C. W. Hunter the payment of excess advancements made by said Hunter in said business, and, for the purpose of so securing the said C. W. Hunter, the said Paul Koehler hereby transfers and assigns to said C. W. Hunter one-half of all profits which become due him under a certain contract entered into between Paul Koehler, C. W. Hunter, D. A. Pelton, J. W. Reid, and J. F. Gautney, dated December 10, 1919."

We think the recitals in the written contract strongly corroborate appellee's version of the agreement, and that the finding of the chancellor, to the effect that appellant was indebted to the appellee in said sum, is supported by the weight of the testimony. It was proper also to allow interest on this amount, at the legal rate, from the date of the written contract acknowledging the indebtedness.

Appellant next contends that the trial court committed reversible error in not dividing the excess, after deducting the overpayment by the partners, equally between them. The copartnership agreement provided for an equal division of the profits between the partners, but this provision had no application in the audit of the account, for there were no profits. The gravel pit was opened and operated at a great loss.

The copartnership agreement contained the following paragraph: "It is mutually agreed that there shall be no division of profits amongst the several copartners until the earnings of the company shall be sufficient to repay to the copartners herein all moneys which they or either of them may have advanced for the purchase of machinery, construction of railroads, tramways, buildings, purchase of leases, real estate or other things necessary for the successful conduct of said copartnership, together with interest thereon at the rate of six per

cent. per annum from the date of such advancement until paid.''

The assets did not sell for enough to repay appellant and appellee advances which they made, hence the court properly applied the clause quoted above in auditing the account.

Appellant's last contention is that the trial court erred in disallowing the salary item claimed by him for operating the gravel pit. He claimed $400 per month as salary from June 1, 1920, until November 1, 1921. On June 1, 1920, the plant was completed and put into operation. At that time appellant assumed the entire control and management thereof, which required a great deal of his time. Appellee did not participate in the management of the business at all, and claimed he did not know that appellant had drawn a salary of $400 per month until the books were audited in the early summer of 1921, else he would have objected. He also denied that appellant mentioned the matter of salary to him or the amount thereof in the office at Memphis or in J. F. Gautney's office in Jonesboro.

Appellant testified that, when they began to mine gravel, he informed appellee in the office at Memphis that he was going to charge a salary of $400 per month for operating the plant, and that later the matter was discussed in the office of J. F. Gautney in Jonesboro, and that no objection was made to the salary or the amount thereof by appellee.

The copartnership agreement contains two paragraphs relating to the services of appellant in connection with the construction and operation of the gravel plant. They are as follows:

"It is further mutually agreed that, until the plant is constructed and the company is ready to begin the mining of gravel on the property hereinbefore mentioned, Paul Koehler shall have the management and control of said business, purchase in the name of the company such machinery, equipment, employ and discharge such laborers, agents and other persons as may be necessary for

the conduct of said business, and keep the books of said company.

"That, until such time as the company is ready to begin the actual business of mining gravel, said Paul Koehler shall not receive any salary or other compensation for his services, save and except actual expenses incurred by him while managing said business."

A reading of these two paragraphs convinces us that it was contemplated by the contract that appellant should draw a salary when the actual operation of the plant should begin. The amount was not specified in the contract, and the evidence is in sharp conflict as to whether any amount was thereafter agreed upon. If no amount was agreed upon, appellant should have been allowed a reasonable salary for his services from June 1, 1920, until November 1, 1921. According to the weight of the evidence, appellant devoted most of his time to the management and control of the business, and it was contemplated between the parties that he should be recompensed for his services. The record fails to show what his services were reasonably worth. The decree must be reversed for the error in refusing to allow appellant a salary, and, as the evidence was not fully developed on this point, the cause will be remanded, with permission to each party to introduce evidence as to the reasonable value of his services and for a restatement of the account after determining this issue.

In all other respects the decree is affirmed.