248 S.W.2d 617 (1952)
SCHROER
v.
SCHROER.
No. 42555.
Supreme Court of Missouri, Division No. 1.
May 12, 1952.
*618 Simrall & Simrall, James S. Simrall, Jr., Liberty, for appellant.
Edwin Earnshaw, Roy K. Dietrich, Dietrich, Tyler & Davis, Kansas City, for respondent.
VAN OSDOL, Commissioner.
In this equitable action for the dissolution of a partnership, for an accounting and for other equitable relief, the trial court entered a decree dissolving the partnership and rendered judgment in accounting for plaintiff and against defendant for $17,606.24. Defendant has appealed.
The action was originally instituted August 28, 1942, by plaintiff, Frank G. Schroer, against his copartner Ernest A. *619 Schroer. The latter died October 11, 1950, after evidence had been heard on the issues raised by the pleadings in this cause but prior to the trial court's decree, and the administratrix of his estate was substituted as party defendant. (Hereinafter we shall refer to defendant's decedent, Ernest A. Schroer, as "defendant.")
Plaintiff had alleged that, December 2, 1940, he and defendant (brothers) had entered into a written partnership agreement to conduct a business enterprise known as "Schroer Brothers Machine Works"; that each party to the agreement bound himself to exert the utmost of his ability to increase the partnership business; that the parties were to have equal rights in the management, operation and control of all matters pertaining to the partnership, and were to equally share the profits and losses; that defendant on or about March 1, 1941, and at all times thereafter, breached the agreement, and usurped the business of the partnership, wrongfully excluding plaintiff from any management or control of the business; that defendant was dissipating, wasting and destroying the partnership assets and business; and that plaintiff has been unable to obtain a statement of the financial condition of the partnership, or to examine the partnership books of account, all to the irreparable injury of plaintiff. Defendant by answer admitted the partnership agreement, and that he was in possession of the partnership property and carrying on the business of the partnership, but defendant denied each and every other allegation in plaintiff's petition and prayed for a judgment of dismissal.
The trial court on plaintiff's application entered a temporary order, October 24, 1944, restraining defendant from disposing of the partnership property. March 27, 1945, the trial court appointed a receiver to take over the partnership assets. The property was ordered sold by the receiver, and the proceeds of the sale were paid into the hands of the clerk of the trial court pursuant to the trial court's order of March 29, 1950. The trial court also designated a referee or special master for the purpose of taking an accounting between plaintiff and defendant, and the cause thereupon proceeded before the referee who, after hearing testimony and examining the books of accounts and an audit of the business affairs of the partnership, reported to the trial court, December 5, 1950, recommending that a decree be entered in favor of the plaintiff and against the defendant in accounting in the sum stated supra, $17,606.24. (The referee's report also recommended the allowance and disallowance of certain claims against the partnership, which claims are not involved upon this appeal.) Defendant having filed exceptions to the referee's report, the cause came up for hearing before the trial court. December 29, 1950, the exceptions were overruled; the report of the referee was confirmed; the partnership was ordered dissolved; and judgment in accounting was rendered in accordance with the referee's report.
The dissolution of a partnership may be granted by a court of equity in favor of an innocent partner who has been excluded by his copartner from participation in the conduct of the business, or where such copartner has refused an accounting, repeatedly breached the partnership agreement, appropriated partnership property to his own use, been guilty of other fraud in the partnership affairs, or committed other gross misconduct. Schneider v. Schneider, 347 Mo. 102, 146 S.W. 2d 584; Beller v. Murphy, 139 Mo.App. 663, 123 S.W. 1029; Annotation, 118 A.L. R. 1422; 40 Am.Jur., Partnership, §§ 245, 246, pp. 300, 301. (See section 358.320 RSMo 1949, V.A.M.S., for the stated grounds for dissolution by decree of court under the presently effective "Uniform Partnership Law," enacted by the 65th General Assembly, L.1949, §§ 1-44, pp. 506-521.) The relationship inter sese of partners is a fiduciary one. Where certain of the partners wrongfully exclude another from its business and take unto themselves the assets of the partnership they become, as to the excluded partner, trustees ex maleficio, Schneider v. Schneider, supra; Filbrun v. Ivers, 92 Mo. 388, 4 S.W. 674, and are to be held accountable *620 to the excluded partner for his share of the subsequently earned profits. Schneider v. Schneider, supra.
In the instant case there was evidence introduced tending to show that plaintiff and defendant as copartners under the stated agreement were engaged in a "general machine shop" business at an address on Holmes Street in Kansas City. The partners manufactured machinists' tools, dies, and other metallic articles. The business, as stated, was conducted under the name of "Schroer Brothers Machine Works" (hereinafter referred to as "Schroer Brothers"). Under the agreement, the partners were to devote their "attendance, and to the utmost of their skill and power exert themselves" to the interests of the partnership business. Although it was not set out in the partnership agreement, the partners had the verbal understanding that plaintiff was to be in charge of "the shop," and defendant was to be in charge of the office and the partnership books of account. The agreement provided that the partnership was to be continued from year to year until dissolved by mutual consent.
In December 1941, plaintiff sustained a physical injury and was unable to work or supervise the work in the shop until the following February. In February (1942), plaintiff returned to work for four or five weeks, but found that the superintendence of the shop work was in charge of a newly employed foreman. Defendant had hired a "new crew of men" in the shop. Plaintiff was told by defendant that he did not want plaintiff interfering with the work of the shop or seeing "what they were doing." In September 1942, defendant offered plaintiff $100 a week to stay out of the shop and thereafter defendant took over the entire management and control of Schroer Brothers. Plaintiff received, but did not cash, a check for $100; and plaintiff did not thereafter accept any of the other checks issued pursuant to defendant's offer. After the instant action was commenced, in August 1942, counsel for the parties and the judge of the circuit court in conference endeavored to get the parties to agree "to work together again." Defendant testified plaintiff "came back and stayed four or five days."
A witness for plaintiff testified that, in the spring or summer of 1941, he had gone with plaintiff to the partnership office to help him "get some money in, to make the payroll with." Defendant slapped "Frank (plaintiff) around considerably" and told him not to be "fooling around the office." In the fall of 1942, defendant built an east-west partition through the building occupied by the partnership at the Holmes Street address and began to conduct an individual enterprise known as "Schroer & Company" in the south side of the building. Defendant continued the operation of "Schroer Brothers" in the north part of the building. The building was so arranged that it had but one entrance door. Defendant changed the lock on the door so that plaintiff could not enter.
October 12, 1942, defendant deposited the sum of $8982.50 with the Columbia National Bank. This deposit was made in the name of "Schroer Bros. Machine Works." The deposit was withdrawn by checks of October 13 and 14, 1942. The evidence tends to show that on September 16, 1942, an account had been opened with Columbia National Bank in the names of defendant and his wife "payable to either or the survivor." The signature card discloses the business of the "depositor" as that of "Machine Shop." A signature card of "Schroer and Company," filed with the City National Bank & Trust Company, dated December 11, 1942, was introduced. Withdrawals from this account were authorized upon signature of defendant or his wife.
The evidence justified the findings of fact stated in the referee's report, that "some time during October, 1942, the defendant, while continuing to operate the partnership machine shop, set up in another part of the same building, another and similar machine shop which he operated under the name, `Schroer & Company.' The two machine shops employed about fifteen men. These men were interchangeably in the two shops but separate records were kept of their time. The two shops had separate machinery, power lines, telephones, *621 etc., but were separated only by some sort of partition. Schroer & Company took business that had formerly been handled by the partnership and other business of a similar nature. About the only business done by Schroer Brothers after Schroer & Company was set up, was business which was subcontracted to Schroer Brothers by Schroer & Company. Schroer & Company took over the customers of the partnership enterprise, but after 1942 about the only customer that the partnership had, was Schroer & Company. The business which the partnership handled on subcontract for Schroer & Company gave it a negligible profit in 1943 and a loss in 1944. * * * Defendant transferred the partnership bank account to the Westport Avenue Bank some time during this period (some time in early 1943) and did not permit the plaintiff to draw checks on the Westport Avenue Bank account. Plaintiff requested that his name be placed on the signature card at the Westport Avenue Bank but defendant refused to comply with the plaintiff's request."
There was evidence tending to support the referee's report that plaintiff received nothing from the partnership during 1943, and in 1944 defendant told plaintiff that he, defendant, was closing out a partnership bank account in which there was a balance of approximately $2300, of which defendant paid plaintiff $1000. In 1941, plaintiff had received $3237.10 from the partnership. After plaintiff had been excluded from participation in the partnership business, he sought employment elsewhere and earned an income of $3299.78 as a machine worker during the year 1942. In that year he also received approximately $200 from the partnership. Plaintiff's income in his other employment for the year 1943 was approximately $3500. In 1944, plaintiff earned the amount of $4034.63. He also received $1000 as a disbursement of the partnership bank account, mentioned supra. Defendant personally received from the partnership the sum of $2670.12 in 1941; and $13,249.79 in 1942. In 1943, defendant appropriated a salary from the partnership in the amount of $4364.24. (The referee correctly considered defendant accountable for this item. As a wrongdoer and as a partner, defendant was limited to a one-half participation in the profits. Schneider v. Schneider, supra.) In addition defendant received $16,979.64, net profits of Schroer & Company during the same year. During 1944, defendant also appropriated to himself a salary from the partnership of $522.70; and he received $11,697.50, net profits of Schroer & Company. And in that year defendant received $1000, being his part of the division of the partnership bank deposit mentioned supra.
Defendant by deposition testified that plaintiff since 1941 had solicited work for himself from customers of the partnership. Plaintiff denied he had made any such solicitation, although he admitted that some of the old customers of Schroer Brothers had "called me up." The evidence of the amount of the work done by plaintiff for the customers of Schroer Brothers is indefinite and unsubstantial and, moreover, plaintiff's income earned elsewhere was taken into account by the referee in his accounting.
However, defendant-appellant contends that the referee erred in the admission of evidence. It is said that during the examination of one Britten, plaintiff's witness, who had been employed by defendant as an accountant and bookkeeper, the referee admitted oral evidence of the amounts of income defendant had derived through Schroer & Company as entered on defendant's income-tax return for the year 1943. This contention is without merit. The witness Britten was testifying in part from his independent recollection and in part by refreshing his recollection from "work sheets" prepared by himself or under his supervision as the employee of defendant in making out the defendant's income-tax returns for the particular year. We bear in mind that the factual issue, to which this testimony was relevant, was defendant's income for the particular year the issue was not the fact of contents of defendant's tax returns. Defendant-appellant also contends error in admitting into evidence a copy of appellant's 1944 income-tax return. This copy, according to *622 the plaintiff's witness Johnson, an accountant, was given to the witness for his reference by defendant personally when the witness was in the defendant's employ and engaged in making defendant's income-tax returns of subsequent years. The referee not incorrectly received the copy into evidence as a statement or admission by defendant of the amount of his income from Schroer & Company for that year.
Defendant-appellant also asserts the referee erroneously admitted into evidence "duplicate deposit slips" as tending to show deposits which defendant had made in the accounts of defendant in the Columbia National Bank and of Schroer & Company in the City National Bank & Trust Company. The deposit slips introduced were duplicates such as were issued to the banks' customers. The admission of the duplicates into evidence, without a showing of the reason for the failure to produce the original slips, was not a violation of the "best evidence" rule. See generally Vol. IV, Wigmore on Evidence, 3d Ed., §§ 1232, 1233, pp. 442-445. The duplicates were not "copies" of the originals, in the sense of being only secondary evidence of the originals. A duplicate is, in legal conception, "an original instrument repeated, a document the same as another in essential particulars, differing from a copy in being valid as an original". 28 C.J.S., Duplicate, p. 590; Vol. 13, Words and Phrases, Duplicate, pp. 632-635; Webster's New International Dictionary, 2d Ed., p. 800. Witnesses, chief clerks of the respective banks, identified the duplicates as having been issued by the banks. Furthermore, the amounts shown on the duplicates to have been deposited to defendant's and Schroer & Company's accounts in the respective banks were verified by the entries as shown on the banks' records.
We have examined the transcript of the record of the proceedings before the referee and find that the referee's findings, which have been reviewed, examined and approved by the trial court, were sustained by the greater weight of the evidence. The referee had heard the evidence introduced by the parties, plaintiff and defendant; had examined an auditor's report of the business affairs of Schroer Brothers Machine Works; and had taken into account the earnings of the plaintiff after he was ousted by defendant from participating in the management or control of the partnership business, the earnings of the partnership business, and the income of defendant from the partnership and from his individually conducted enterprise under the name of Schroer & Company. The evidence justified the conclusions that defendant, without just cause, excluded plaintiff from participation in the partnership business, and instituted his individual enterprise, Schroer & Company, with a view of drawing the whole of the profits of the two enterprises unto himself. The instant case is not like the case of Schneider v. Newmark, 359 Mo. 955, 224 S.W.2d 968, wherein the partners had modified their partnership agreement relating to sharing of profits, and wherein there was no evidence the defendant had appropriated and continued the partnership assets and business to the exclusion of the plaintiff.
In the instant case defendant wrongfully excluded plaintiff from participation in the partnership affairs, continued to utilize the partnership name and assets to his own personal advantage and was taking over the partnership customers unto the individually conducted enterprise of his own; as the referee found, Schroer & Company took the business that had formerly been handled by the partnership and other business of a similar nature. These shown facts justify the decree adjudging and determining defendant's accountability for the subsequently earned profits. Schneider v. Schneider, supra; Pemberton v. Ladue Realty & Const. Co., 237 Mo.App. 971, 180 S.W.2d 766; Zimmerman v. Harding, 227 U.S. 489, 33 S.Ct. 387, 57 L.Ed. 608; Karrick v. Hannaman, 168 U.S. 328, 18 S.Ct. 135, 42 L.Ed. 484; Pearce v. Ham, 113 U.S. 585, 5 S.Ct. 676, 28 L.Ed. 1067; Annotation, 80 A.L.R. 42; Vol. 1, Rowley, Modern Law of Partnership, § 396, pp. 468-473.
The judgment should be affirmed.
It is so ordered.
*623 LOZIER and COIL, CC., concur.
PER CURIAM.
The foregoing opinion by VAN OSDOL, C, is adopted as the opinion of the court.
All of the Judges concur.