Forrest J. SCHOELLER, Plaintiff-Appellant,

v.

Forrest L. SCHOELLER et al., Defendants-Respondents.

No. KCD 26203.

Missouri Court of Appeals, Kansas City District.

June 4, 1973.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 5, 1973.

Application to Transfer Denied Sept. 10, 1973.

Tom B. Kretsinger, Warren H. Sapp, III, Kretsinger & Kretsinger, Kansas City, for plaintiff-appellant.

William J. Turpin, Wherritt & Turpin, Liberty, for defendants-respondents.

Before DIXON, P. J., and SHANGLER and SWOFFORD, JJ.

SWOFFORD, Judge.

This matter involves a long history of litigation affecting a family partnership. Its origin was a suit filed in 1967 by the plaintiff for a judicial dissolution of the partnership and for an accounting. It was brought against Forrest L. Schoeller and Sylvia A. Schoeller, plaintiff's mother and father; William F. Schoeller and Madeline J. Schoeller, Robert L. Schoeller and Virginia L. Schoeller, plaintiff's brothers and sisters-in-law, and Schoeller's, Inc., a corporation organized by plaintiff's brothers. The partnership between plaintiff, his father and mother and his two brothers was judicially admitted and the original trial

before the court without a jury resulted in a judgment in favor of the plaintiff and against the defendant father, Forrest L. Schoeller, only, in the amount of $7,521.03. The plaintiff appealed from this judgment, asserting that it was based upon erroneous factual conclusions and "that he was entitled to a decree of dissolution of the partnership and an accounting of his interest therein and his profits therefrom."

In this first appeal, this court held that the partnership was dissolved in the spring of 1962 and that the plaintiff was entitled to an accounting and a judicial determination of his interest in the partnership as of the date of dissolution. It was further held that plaintiff was entitled under the Uniform Partnership Law, Chapter 358 RSMo 1969, to either (1) an amount equal in value to his capital in the partnership with interest thereon, or (2) his capital and the profits from the business attributable to the use of such in the continuing business of the enterprise. The original judgment was reversed and the cause remanded for further proceedings. Schoeller v. Schoeller, 465 S.W.2d 648 (Mo.App. 1971).[1]

In response to our mandate in the first appeal, the court below on September 17, 1971 appointed The Honorable William E. Turnage as Referee to hear the evidence and report to the court with reference to the partnership accounting. Thereafter, Referee Turnage held hearings, received evidence, and filed his report with the court below on February 16, 1972.

The trial court heard the parties' exceptions to the Referee's reports, received their stipulations as to certain matters, amended or modified the Referee's report in certain particulars, and on April 12, 1972 entered his judgment from which this second appeal is taken by the plaintiff.

For the purpose of our review of this judgment, these facts are without dispute:

Defendants Forrest L. Schoeller and his wife Sylvia started a grocery business in Liberty, Missouri in 1955, and in January, 1959 they entered into a written partnership agreement with their three sons, the plaintiff Forrest J. Schoeller and the defendants Robert and William Schoeller. Under the terms of this agreement, the five (5) partners were to share equally in the profits and losses of this enterprise; defendants Forrest L. and Sylvia A. Schoeller contributed all of the capital (presumably the assets of their then business) and were to act as general managers and set the salaries of the other partners. The effective date of this partnership was January 5, 1959. The partnership continued until April 2, 1962, when it was dissolved. In about July of 1962, the father and mother, Forrest L. and Sylvia A. Schoeller, agreed to sell their interest in the partnership to their sons, defendants William and Robert, for $100,000.00 payable $10,000.00 per year, without interest, and the parents thereupon left Missouri and moved to Arizona.

Thereafter, as of January, 1963, William and Robert and their respective wives formed a corporation, defendant Schoeller's, Inc., and all of the assets of the old partnership were transferred to and used thereafter by the corporation. There was never any cessation of the business nor any attempt to "wind up" the partnership. Plaintiff was not paid any salary nor did he receive any portion of the profits after April 2, 1962. It was accepted by the parties, for the purposes of the partnership accounting, that the plaintiff's starting capital account in the partnership in January, 1959 was $11,383.48 and that his capital account on April 2, 1962 was $30,098.02.

---

1. It was also held that there had been no accord and satisfaction or settlement of the plaintiff's partnership interest by certain promissory notes signed by plaintiff and defendant Forrest L. Schoeller. The matter of this occurrence is hereafter discussed as pertinent to this current decision.

After our mandate in the first appeal, the plaintiff elected to assert his right to his capital account and the *profit* of the business after April 2, 1962 attributable to its use *rather than interest* thereon. Section 358.420 RSMo 1969.

In other areas of this record, the facts are not agreed, some are vague, and others are in apparent dispute. Where pertinent to our present decision, such facts will be hereafter noted.

The court below found:

1. The capital accounts, as shown on the records and by Stipulation of the parties, as of 4/2/62 were as follows (Exhibit No. 8–E) (the percentage figures are ours):

| | | |
|---|---|---|
| Forrest L. & Sylvia | $ 10,289.87 | ( 10.2%) |
| William S. | 30,339.52 | ( 30.0%) |
| Robert S. | 30,077.49 | ( 29.9%) |
| Forrest J. (Plaintiff) | 30,098.02 | ( 29.9%) |
| | $100,804.90 | (100.0%) |

2. The plaintiff's capital account should be reduced by the amount of $11,382.48 (his starting capital account, which he had not paid into the partnership) making his capital account $18,715.54 (or 18.566%) as of April 2, 1962.

3. Plaintiff's share of the profits attributable to the use of his capital was $79,813.56.[2]

4. Plaintiff was awarded judgment against all defendants in the amount of $18,715.54 (capital) plus $79,813.56 (profit) or a total of $98,529.10.

5. A judgment of $11,000.00 was entered in favor of Forrest L. Schoeller and Sylvia A. Schoeller against the plaintiff on such defendants' amended counterclaim.

6. Costs were assessed at 10.4%, to be paid by plaintiff, and 89.6% to be paid by defendants.

7. December 26, 1971 was determined to be the date of the wind-up of the partnership and of the final accounting.

Appellant on this appeal asserts that the court below was in error in several respects: *First*, in allowing the remaining partners who worked in the business any compensation after dissolution of the partnership; *Second*, in permitting an allowance of Missouri corporate franchise taxes as a charge upon the profits of the partnership; *Third*, in failing to add to the profits of the business items not shown on

---

2. In arriving at this figure, the court apparently adopted the formula employed by Referee Turnage. The referee used the profit and loss statements for the period April 2, 1962 to January 6, 1963 (the date that the corporation commenced operation) by adding to the net profit shown therein the amount drawn by the defendant partners for 1962 and deducting therefrom compensation to each remaining partner of $150.00 per week each for 1962.

For the years 1963 through 1971, the referee used the net income as shown on the corporate tax returns and apparently deducted therefrom corporate franchise taxes and an amount calculated as corporate income tax. To this net income figure he added the amounts paid each defendant and deducted the sum of $150.00 per week as compensation for remaining partners for 1963 to 1966 and the sum of $200.00 per week from 1966 through 1971. He then applied to the result the factor of 20.9% as plaintiff's share of the profit.

In each instance, the court apparently applied the factor of 18.566% to arrive at plaintiff's share. The difference in the factors of 20.9%, as used by the referee, and 18.566%, as used by the court, results from the fact that the referee deducted the unpaid starting capital account of the plaintiff of $11,382.48 both from plaintiff's capital account and from the total capital as of April 2, 1962, whereas the court, pursuant to a stipulation of the parties, deducted such amount only from the plaintiff's share of the capital as of April 2, 1962. Thus, plaintiff's percentage interest in the total capital was reduced from 20.9% to 18.566%.

the corporate tax returns covering rebates, salary to Forrest L. Schoeller for the years 1965, 1966 and 1967 of $5,200.00 per year, and $100,000.00 paid from the corporation for the purchase of the interest of Forrest L. Schoeller and Sylvia A. Schoeller in the partnership; *Fourth*, by offsetting the amount of plaintiff's original capital account; and *Fifth*, by rendering judgment against the plaintiff on the counterclaim of Forrest L. Schoeller in the amount of $11,000.00.

■ Even though this action is governed by the Uniform Partnership Law, Chapter 358, RSMo 1969, adopted by Missouri in 1949, it is basically an equitable proceeding and governed by equitable principles. The factual issues were submitted to a referee whose report was adopted by the trial court (with modifications as above noted) and judgment entered thereon. In such posture, we review this matter *de novo* upon both the law and the evidence, 68 C.J.S. Partnership § 405, pp. 927–929; Phelps v. Watson-Stillman Company, 365 Mo. 1124, 293 S.W.2d 429, 434–435 (1956); Hogan v. Krohn, 318 S.W.2d 163, 167 (Mo.1958). Where possible, we must enter final judgment, if there is before us sufficient record and evidence from which we "can perform this function with some degree of confidence."

We have carefully reviewed both the transcript in the former appeal and the one now before us, the great volume of exhibits, and the briefs, and have engaged in substantial independent legal research and we have reached the conclusion that this matter must be returned to the trial court for further proceedings and the entry of a new judgment in accordance with this opinion.

The fundamental problem before us is one of accounting and our conclusions reached herein are such that all the facts necessary for their ultimate computation and the striking of a final balance of account are not before us, as will more clearly appear in the course of this opinion.

This necessitates the remand of this case for the development of such facts and the ultimate striking of such balance of account and the entry of final judgment in the court below. It seems that this could be done upon the development of additional facts by the trial court, through further reference, or hopefully, by stipulation of the parties in the light of our mandate herein.

Some preliminary matters of fact and principles of law which guide our path through this labyrinth need to be stated.

When the partnership was formed by written agreement effective January 5, 1959, the grocery business theretofore owned and operated by defendants Forrest L. Schoeller and his wife Sylvia became a partnership between them and their three sons; the plaintiff Forrest J. and the defendants Robert and William, and was thereafter operated as such until April 2, 1962.

The written agreement provided that all of the capital of the partnership was contributed by Forrest L. and Sylvia A. Schoeller and would remain their property "so long as either or both are parties hereto", and further provided that they could assign their share or any part thereof at any time. Forrest L. and Sylvia A. Schoeller were made general managers of the business and were given the power to "set all salaries to be paid all the partners, which salaries shall be considered as a business expense" and provided that all net profits or losses should be divided or contributed. equally.

From the outset of this partnership, the books of the company, tax returns, and all other records, show that the capital accounts were established at 40% for Forrest L. and Sylvia A. Schoeller, and 20% each for Forrest J., Robert and William Schoeller. The existence of a valid partnership was admitted by all parties and it was agreed that the plaintiff Forrest J. Schoeller's starting capital account on Jan-

uary 1, 1959 was $11,382.48, and on April 2, 1962 was $30,098.02.

There is no dispute that neither plaintiff Forrest J. nor his two brothers ever actually paid into or contributed to the partnership the amounts of their beginning capital accounts during the existence of the partnership. Sometime in 1962, after dissolution of the partnership, the father, Forrest L. Schoeller, made arrangements for the plaintiff to execute a promissory note payable to him personally in the amount of $11,382.48, and at the same time Forrest L. Schoeller executed a note to Forrest J. for the sum of $29,903.51, which was never delivered. These notes were executed because of an impending audit by the Internal Revenue Service and we held in the prior appeal that they did not constitute any accord and satisfaction or settlement of plaintiff's partnership interest. Schoeller v. Schoeller, 465 S.W.2d 648 (Mo.App.1971). For the purpose of this opinion, this transaction may be disregarded.

In about August of 1961, the plaintiff became ill and was unable to work in the store for a period of time. He then returned for a while, working shorter hours. It was then apparently decided that he was not physically able to do the hard work incident to the grocery business, and he and his father, Forrest L. Schoeller, looked around for other fields of business for plaintiff, and he (plaintiff) decided to go into the feeding and raising of hogs. For this purpose, he borrowed $12,000.00 from his father and has repaid $1,000.00 and still owes $11,000.00 on this loan, which is the subject of the counterclaim against plaintiff herein. He did not work again in the store, and the parties stipulated that the partnership was dissolved as of April 2, 1962.

After the dissolution, Robert and William, and the father, Forrest L., continued to operate the business until July 8, 1962, when Forrest L. sold his interest in the business to Robert and William and moved to Arizona, where he and his wife remained until December of 1964.

Robert and William Schoeller incorporated the business apparently as of January 1, 1963. They continued to operate it as a corporation with themselves and their wives as sole owners of the stock, and although the business records are incomplete and inadequate, it would appear from Forrest L. Schoeller's individual income tax returns that he received from Schoeller's, Inc. certain payments which he declared as capital gain over a period of years, representing payments to him for his sale to his sons Robert and William of his partnership interest in July, 1962.

In the fall of 1968, Robert Schoeller left the family grocery business and went into banking. Forrest L. Schoeller purchased Robert's stock in Schoeller's, Inc. for $50,000.00.

At the time of the partnership dissolution on April 2, 1962, the record does not disclose any substantial evidence that there was any reason for plaintiff leaving the business, other than his health. It does not appear that he was wrongfully or fraudulently excluded from the business. His father, defendant Forrest L. Schoeller, helped him by counsel and money to establish himself in the "hog business" and he seemed to have enjoyed good relations with his brothers for a period of time. He and his wife shopped at the store, he used it as a retail outlet for "Watkins Products" which he was handling as a side line to his hog business, and he made no demands for an accounting, receivership or winding up of the business until shortly before this suit was filed. His trouble with his brothers arose from an incident where he removed some items from the store—an incident entirely unrelated, it would seem, to the partnership affairs.

We decline to hold upon the record before us that the plaintiff was wrongfully expelled or excluded from the partnership; that the remaining partners wrongfully or improperly refused to wind up the partner-

ship business, or improperly continued it without plaintiff's consent, or that they ·have been shown to have been guilty of any fraud upon or other extreme acts of culpability toward, the plaintiff.

In this posture of the case, the task of the court below was, and of this court is, to arrive at an equitable accounting of the plaintiff's interest in the partnership business. It should be here noted that the plaintiff-appellant agrees with the *basic method* of computation of this interest in the profits attributable to his share of the capital (App. Brief, pp. 8–9), but disagrees with the *application* and *results* of that method as employed by Referee Turnage and the trial court.

We are guided in this task by certain statutory law and legal principles which are applicable to this case.

Missouri adopted the Uniform Partnership Law in 1949, and it is now Chapter 358 RSMo 1969. Section 358.290 of this chapter provides:

*"Dissolution defined.—*

The dissolution of a partnership is the change in the relation of the partners caused by any partner ceasing to be associated in the carrying on as distinguished from the winding up of the business."

Section 358.300 of the law provides:

*"Partnership not terminated by dissolution.—*

On dissolution the partnership is not terminated but continues until the winding up of partnership affairs is completed."

The grocery business of this partnership was dissolved April 2, 1962 by reason of the plaintiff ceasing to be associated with its business—but its business was not (and still is not) "wound up" in the statutory sense. By the decree of the court below of April 12, 1972, with the apparent agreement of the parties, the affairs of the partnership were "judicially wound up as of

December 26, 1971." We are therefore concerned with the plaintiff's rights and his accounts between April 2, 1962 and December 26, 1971.

■ The Uniform Partnership Law contemplates that dissolved partnerships may continue in business for a short, long or indefinite period of time, so long as the rights of creditors are not jeopardized and so long as none of the partners insist on a winding up and final termination of the partnership business. Usually, of course, it is necessary to wind up partnership affairs within a reasonably short length of time and apply partnership assets and settle the various accounts as provided by Section 358.400, Rules of Distribution.

In the case before us, however, a unique situation exists, which so far as the briefs herein and our independent research disclose, has never before confronted an appellate court of this state for decision. After the dissolution of this partnership, it was continued by at least the implied consent of all partners from April 2, 1962 until shortly before this suit was filed in May, 1967, when for the first time the plaintiff demanded an accounting and a "winding up" of its business. During those years, the business prospered in great degree under the aegis of the defendants. The rights of outside creditors or others are in no way here involved—only the rights and liabilities of the former partners.

Section 358.420, provides in part as follows:

"When any partner retires * * * and the business is continued under any of the conditions set forth in * * * [Sec. 358.410] * * * without any settlement of accounts as between him * * * and the person or partnership continuing the business * * * he * * * may have the value of his interest at the date of dissolution ascertained, and shall receive as an ordinary creditor an amount equal to the value of

his interest in the dissolved partnership with interest, or, at his option * * * in lieu of interest, the profits attributable to the use of his right in the property of the dissolved partnership; * * *"

■ It thus is apparent that upon the dissolution of the partnership on April 2, 1962, the plaintiff became a creditor thereof and under the above section he was given the option of having his capital plus interest, or in lieu thereof have his capital account plus the profits attributable to the use thereof during the continuance of the partnership business. He chose the latter option. Stein v. Jung, 492 S.W.2d 139, 144–145 (Mo.App.1973).

■■ During this period of years, the defendants occupied the position of trustees or fiduciaries to the plaintiff and are accountable to him as such, Section 358.-210(1); Filbrun v. Ivers, 92 Mo. 388, 4 S. W. 674 (1887); Schroer v. Schroer, 248 S.W.2d 617 (Mo.1952). The fact that the remaining and working partners transferred the business operations to a corporation would in nowise affect this status and the succeeding corporation is no less a trustee-fiduciary and is properly a party to this action.

With these definitions of status, rights and potential liabilities before us, we must review the record and resolve so far as possible the accounts of the partners, under equitable principles and with power to adjust or direct the adjustment of all matters relating to the plaintiff's interest in the partnership.

*Capital Account of Plaintiff.* Referee Turnage accepted the agreed figure of plaintiff's starting capital as $11,382.48 and his capital account as of April 2, 1962 as $30,098.02. He deducted the starting capital from the latter figure and arrived at a *net* capital account as of the date of dissolution of $18,715.54 which, added to the capital accounts of the other partners as of April 2, 1962, made a total capital account

of $89,422.42. Plaintiff's net capital upon such basis represented 20.9% of the total capital, and it was this factor which was employed by the Referee in computing plaintiff's share of the profit.

In proceedings before the trial court, on exceptions to the Referee's report, the parties, however, stipulated that the plaintiff's beginning capital should not be subtracted from the total capital account as of April 2, 1962, and that the total capital account therefore as of that date was $100,804.90. Using this method of computation, the plaintiff's net capital account as of the date of dissolution represented 18.556% of the total capital, and it was this factor which was employed by the trial court in figuring plaintiff's share of the profits. We, of course, are bound by this method which reflects the stipulation of the parties.

■ The plaintiff complains, however, that no deduction should be made from the plaintiff's total capital; that he should be given credit for his total capital account and was entitled to the full sum of $30,098.02 in liquidation, and that the latter figure should have been employed, which would result in a factor of 29.9% in figuring his profit. We do not agree with the plaintiff in this position or that the equities compel its adoption.

There is no dispute that the plaintiff did not at any time actually contribute his starting capital, or any part thereof, in cash or property, to the partnership. Even though this is true, his capital account in a period of three (3) years almost trebled in value.

■ We, therefore, hold, as did the trial court, that the plaintiff's capital account as of April 2, 1962 was $18,715.54 for which he is entitled to judgment, and that said sum represents 18.566% of the total capital as of April 2, 1962, and that this factor was properly used by the trial court in computing plaintiff's share of the profits.

*Salaries for Remaining Partners.* Both Referee Turnage and the trial court allowed as a set-off against the profits to which the plaintiff was entitled between April 2, 1962 and December 26, 1971, salaries for three partners in the amount of $150.00 per week each, for the year 1962, and for two partners for the years 1963, 1964 and 1965. A set-off was further allowed at the rate of $200.00 per week for the years 1966, 1967, 1968, 1969 and 1970, upon the basis of two partners working in the business. A further set-off was allowed in the year 1971 upon the basis of $150.00 a week each for two partners working in the business.

■ It is the general rule that no member of a partnership is entitled to compensation as salary in the absence of an agreement, either express or implied, that such be paid, even during the existence of a partnership. This general rule is given specific statutory expression in Section 358.180(6), RSMo 1969, which is part of the Uniform Partnership Law and which provides:

> "No partner is entitled to remuneration for acting in the partnership business, except that a surviving partner is entitled to reasonable compensation for his services in winding up the partnership affairs."

Plaintiff urges upon us his contention that this statute applies and that therefore no salary credit should be allowed to the defendants, and further relies upon the cases of Schneider v. Schneider, 347 Mo. 102, 146 S.W.2d 584 (1961) and Schroer v. Schroer, *supra.* We conclude that neither the above-quoted statute nor the cited cases are applicable to the case at bar.

■ The statute is inapplicable because the partnership business between April 2, 1962 and December 26, 1971 was not in the process of "winding up" but was, by at least tacit agreement of the parties, being continued as a going concern. Under those circumstances, the applicable provi-

sions of the Uniform Partnership Law was Section 358.420.

The *Schneider* and *Schroer* cases, *supra,* are inapplicable because in each of them the referees' decisions to disallow salaries of remaining partners were summarily upheld by our Supreme Court because such remaining partners were shown to be wrongdoers who improperly expelled the plaintiffs from the partnership business. Such culpability was not shown in the case before us.

It was admitted by all parties to this action that the work performed by the partners in the supermarket, both before and after plaintiff's withdrawal, required extremely hard physical effort and long hours. After plaintiff's illness and the resulting dissolution of the partnership, the records before us indicate that the defendant partner, William Schoeller, continued uninterruptedly, devoting his full time to the business; that Robert Schoeller devoted his full time to the business until his withdrawal to enter the banking business, and the sale of his interest to his father, and that Forrest L. Schoeller perhaps devoted some time to the partnership business after his return from Arizona in December, 1964.

Further, the records before us conclusively show that these efforts of the remaining partners were highly profitable to the plaintiff. Not only did his capital account increase approximately three-fold, but the profits from the use of that capital now due him for a period of a little less than 10 years will be in the neighborhood of $100,000.00, more or less, without his contribution of either capital or work.

Further, it is apparent under the original partnership agreement that it was contemplated that all parties would work in the partnership business and would receive a salary originally to be determined and set by defendants Forrest L. and Sylvia A. Schoeller. The undisputed testimony before us is that at the time of the plaintiff's illness and withdrawal from active partici-

pation in the business, each of the three sons, plaintiff, William and Robert, were being paid a salary of $150.00 per week. Further, it is apparent that the plaintiff knew that his brothers William and Robert were working in the store and operating the business after dissolution, and it may be presumed that he knew that they were being paid a salary for that work just as he had been paid, and he never at any time protested or objected to the continuation of this custom and practice with reference to the operation of the business.

The authorities are not in accord upon this problem of salaries to remaining partners in the absence of a specific agreement, but we feel that the better reasoned decisions are based upon the principles as declared in Rowley on Partnership, Section 42.3, where he stated at page 814:

"The best considered authorities hold that the former partner * * * is entitled to the profits which were earned by his share of the assets, or according to his share of the capital, after deducting such share as is attributable to the skill and services of those who have continued to carry on the business."

Rowley continues at pages 815–816:

"Where there is no such consent, and the degree of culpability is held not to be extreme, such a partner is often held entitled to an allowance for his skill and services in accumulating the profits; but in such case where the degree of culpability appears to be great, compensation may be denied. A considerable number of decisions have allowed compensation to a surviving partner, or to those who continue the business on the retirement of a partner, or after excluding a partner from the business, where a share of the profits has been claimed largely, at least, because the continuation was profitable and because profits were claimed * * *

A rationale among the cases is, however, difficult to establish and usually the right to compensation has depended upon the facts of the particular case."

See: Kalez v. Miller, 20 Wash.2d 362, 147 P.2d 506, 507–508 (1944); Godfrey v. Templeton, 86 Tenn. 161, 6 S.W. 47 (1887); Drummond v. Batson, 162 Ark. 407, 258 S.W. 616 (1924); Swarthout v. Gentry, 62 Cal.App.2d 68, 144 P.2d 38 (1944); Koehler v. Hunter, 166 Ark. 27, 265 S.W. 972 (1924); Chambers v. Sims, 13 Utah 2d 371, 374 P.2d 841 (1962).

Plaintiff relies strongly upon the case of Wikstrom v. Davis, 211 Or. 254, 315 P.2d 597 (1957) (which was cited in our former opinion in this matter upon another point).

It is true that the Supreme Court of Oregon in *Wikstrom*, under the facts of that particular case, disallowed a claim for compensation to the remaining partner where it was shown he was guilty of complete disregard of the rights of the expelled partner or his obligation toward such expelled partner. Later, however, the same court in Fry v. Ashley, 228 Or. 61, 363 P.2d 555 (1961) recognized an exception to the rule, that a surviving or remaining partner may be entitled to compensation where one partner voluntarily withdraws and thus casts the burden of continuation or winding up of the partnership business upon the remaining partner. We have no quarrel with *Wikstrom* or *Fry*, but do not deem either decision authoritative here because of the different factual situation there involved. See also: 60 Am.Jur.2d, Partnerships, Section 233, pp. 141–142.

■ We, therefore, hold that the remaining partners, defendants here, are entitled to some credit for salaries from the period of April 2, 1962 to December 26, 1971; however, such salaries should be limited to $150.00 per week for each partner (since that was the salary schedule upon dissolution) and should be credited for only the actual periods of time which each partner spent full time in the operation and management of the partnership

business. The record before us does not clearly show such periods. It does show, however, that defendant Forrest L. Schoeller was absent from the state for a period of time and his activities with reference to the business upon his return do not appear. It further shows that Robert Schoeller left the business during this period. Therefore, in order to effectuate the mandate of this ruling, it will be necessary for either the trial court itself, or by reference, or by stipulation of the parties, to determine these facts and to make this computation.

■ *Corporate Taxes.* In plaintiff's after trial motion to amend the findings, conclusions and judgment, or in the alternative for a new trial, he objects to the allowance for taxes (specifically Missouri corporate income taxes). In his Brief, pp. 16–17, he confines this objection to corporate franchise taxes. The record is not clear as to just which taxes, if any, were allowed as an expense to reduce the net profit of the corporate operation for the purpose of computing plaintiff's share of the profits. We have previously noted the remarkable success from a profit standpoint and the resultant benefits flowing to plaintiff from this operation. We believe and so hold that corporate taxes were and are legitimate expenses and were properly allowed as charges against the profits. These items should be ascertained and so treated.

*Rebates.* Plaintiff complains that certain "rebates" were not reflected as income on the corporate income tax returns. Neither the transcript on the former appeal nor the transcript filed herein is clear as to just what is meant by this term. We assume that it means certain refunds or discounts supposedly paid by suppliers, or others. The only evidence that any such funds are a factor here is the copy of a letter written by counsel for the company, referring to a sum of $4550.00 in 1968, which sum, the letter states, was "divided" by Robert and William Schoeller and "not run through the store". Both William and

Robert Schoeller denied under oath receiving any rebates at any time, other than those deposited in the corporation's account. This contention of plaintiff is without merit.

■ *Salary, Forrest L. Schoeller, 1965, 1966 and 1967.* Plaintiff complains of items of expense upon the corporate tax returns covering the years 1965, 1966 and 1967 as salary for defendant Forrest L. Schoeller of $5200.00 per year, asserting that such was improperly deducted from profits. With this position, we agree. As we have ruled above, the only proper salary deductions for the remaining partners, so far as this accounting is concerned, are the sums of $150.00 per week each for full time actually spent in the partnership business.

*Purchase of Interest, Forrest L. and Sylvia A. Schoeller.* The evidence before us indicates that in July of 1962, the defendants William and Robert Schoeller made an agreement with Forrest L. and Sylvia A. Schoeller to purchase their interest in the partnership business for the sum of $100,000.00, payable $10,000.00 per year for ten years. It was stated that they gave their note or notes to cover this purchase price and it is asserted that the $100,000.00 was paid by checks drawn on Schoeller's, Inc. The plaintiff asserts that such amount should be included in the profits upon which his interest is computed and not deducted therefrom as an "expense". It is not clear from the record just how this item was handled.

Following oral argument and upon request of the court, the defendants filed as part of this record a copy of a so-called "Journal Entry", marked Exhibit A, and a Financial Statement dated October 3, 1971. The motion accompanying said exhibits states that "this journal entry shows that the fixtures and retained earnings of the parents were used to set up an inter-store note of $100,000.00", and that this inter-store note "was not a charge against profits" and that, therefore, the accountant's

treatment of this obligation "did not increase or decrease the earnings applicable to plaintiff's credit."

Robert Schoeller testified that he and his brother William personally owed Forrest L. Schoeller that debt and that some of the payments were made by the corporation and some made personally by him and William.

William testified that any payments made by the corporation on the note were charged back to his and Robert's individual accounts.

We are unable to conclude from a study of the record, including the after-argument exhibits above referred to, just how this was handled upon the company books. We do observe, however, that the defendant William L. Schoeller declared capital gains on his individual income tax returns for the years 1962 through 1969 covering this "sale". This area of the case also requires further factual findings or stipulations in the court below, as the same will affect the ultimate judgment.

■ We rule that since this arrangement between the sons and father defendants was made after the dissolution of the partnership on April 2, 1962 and was a personal transaction, that any payments found to have been made on that obligation with corporate-trustee funds were improperly charged as a business expense, and that the amount of profit due the plaintiff should not be encumbered thereby. The court below is directed upon ascertainment of these facts to adjust the accounting and judgment accordingly.

*Judgment on Counterclaim.* The court below granted a judgment in favor of defendants Forrest L. and Sylvia A. Schoeller against the plaintiff on the defendants' Amended Counterclaim in the amount of $11,000.00. This was error and improper in this suit for partnership accounting.

■ The undisputed evidence is that this obligation arose at approximately the time of the dissolution of the partnership and was a personal and individual loan to plaintiff from his father in order to go into the "hog business" and was and is entirely divorced from any matter relating to the partnership or to the partnership accounting.

■ It has long been a firm principle, as related to partnership accounting, that personal claims at law as between partners and not directly related to the partnership business are not proper elements for consideration in the accounting. Pemberton v. Ladue Realty and Construction Company, 237 Mo.App. 971, 180 S.W.2d 766, 771 (1944); 68 C.J.S. Partnership § 385 d., p. 897; 60 Am.Jur.2d, Partnerships, Section 353, pp. 240–241.

If defendants Forrest and Sylvia Schoeller have a claim against the plaintiff by reason of this loan (various defenses are asserted by plaintiff), it is a claim at law, an action upon a promissory note, or on a debt, not involving the partnership, and separate and distinct from the case before us. Popovsky v. Griwach, 361 Mo. 1120, 238 S.W.2d 363 (1951); Glaus v. Gosche, 118 S.W.2d 42 (Mo.App.1938); Willis v. Barron, 143 Mo. 450, 45 S.W. 289 (1898); Jones v. Anheuser-Busch Brewing Ass'n, 189 S.W. 631 (Mo.App.1916).

For these reasons, the judgment in favor of the defendants Forrest L. and Sylvia A. Schoeller against the plaintiff on their amended counterclaim is set aside and said counterclaim is dismissed, without prejudice to those defendants to pursue any independent action which they may have upon said debt.

For all of the reasons herein stated, the judgment below is reversed and the cause remanded with directions to the trial court to complete the factual record in this case as herein indicated, and upon the ascertainment of such additional facts to enter a judgment in favor of the plaintiff against all of the defendants in conformity with

this opinion, and to apportion the costs of these proceedings in accordance with the formula originally employed by the trial court.

All concur.